## In re MANVILLE FOREST PRODUCTS CORPORATION, Debtor.

Nos. 83 Civ. 1522, 83 Civ. 2763, 83 Civ. 4195 and 83 Civ. 4860.

United States District Court, S.D. New York.

July 14, 1983.

White & Case, Jeffrey Barist, Allan L. Gropper, James P. Laughlin, William P. Hammer, Jr., New York City, for Prudential Ins. Co. of America, Aetna Life and Cas. Co., The Travelers Ins. Co., and The Mutual Life Ins. Co. of New York.

John P. Maloney, New York City, for St. Regis Paper Co.

Lahr, Dillon, Manzulli, Kelley & Penett, P.C., Staten Island, N.Y., for Chembond Corp.

Davis Polk & Wardwell, Miriam G. Cedarbaum, Karen E. Wagner, Levin, Weintraub & Crames, Michael Crames, New York City, for debtors.

Milbank, Tweed, Hadley & McCloy, John J. Jerome, John Gellene, New York City, for Committee of Unsecured Creditors.

Melvin A. Yellin, New York City, for Bankers Trust Co.

Securities And Exchange Commission Nathan Fuchs, New York City.

## OPINION AND ORDER

LEVAL, District Judge.

These actions seek review of proceedings in the Bankruptcy Court. Certain creditors of Manville Forest Products Corporation (Forest Products) (1) move to withdraw the reorganization of Forest Products from the Bankruptcy Court; and (2) seek to appeal orders of the Bankruptcy Court extending the period during which the debtor has the exclusive right to file a plan of reorganization.

## FACTS

A. *Background*

In August 1982, the Manville Corporation and 20 of its subsidiaries (the Manville companies), including Johns-Manville Corp., the world's largest producer of asbestos, filed for protection from their creditors under Chapter 11 of the Bankruptcy Code. The principal reason for the filing was possible liability for personal injuries and illnesses arising out of the asbestos operations of Johns-Manville. At the time of filing the debtors estimated this possible liability "between $2 billion and many times that amount".

One of the wholly owned subsidiaries of Manville Corporation on whose behalf a petition was filed is Forest Products, a timber company that was acquired by Johns-Manville through a hostile tender offer in 1978. As the result of a corporate restructuring in 1981, Manville Corporation was created as parent holding company. Forest Products is one of its wholly owned subsidiaries.

The parties here seeking relief (hereinafter the "Forest Creditors") are unsecured creditors of Forest Products.[1] They comprise five insurance companies which together hold over $90 million of Forest Products' debt and two trade creditors with roughly half a million dollars apiece.[2] Throughout the proceedings in the Bankruptcy Court they have sought to separate the Forest Products reorganization from the reorganization of the other Manville companies, arguing that they are being improperly prejudiced by the entanglement of their financially sound debtor with the besieged asbestos maker.

Forest Products is in the business of owning timberland and producing timber and other wood products. It was an independent corporation called Olinkraft, Inc. prior to the 1978 tender offer acquisition. The loans by the insurance companies were made to Olinkraft prior to the Manville acquisition, and the notes which they hold predate the acquisition. The Forest Creditors assert without opposition that Forest Products is a financially healthy company, with a net worth of over half a billion dollars. It has nothing to do with the asbestos business and faces no potential asbestos liability.

The Forest Creditors also contend that Forest Products operates in virtually complete independence of the other companies. They submit affidavits of counsel summarizing evidence (not itself before the court) in support of this contention. The official creditors' committee of the Manville companies contests this assertion and submits counsel's affidavit claiming that other evidence provides "indications that would compel a conclusion that [Manville Corporation and Forest Products] are dependent on one another."

B. *Proceedings in the Bankruptcy Court*

1. *Consolidation of proceedings*

An order of the Bankruptcy Court, entered on the date of filing, provides for joint administration of the 21 Manville companies. Shortly thereafter the Bankruptcy

---

1. Certain positions taken in the Bankruptcy Court on behalf of creditors of Forest Products are ascribed in this opinion to the Forest Creditors. This designation may be loose, for the record does not indicate the exact composition of the groups taking these positions.

2. Their claims are as follows.

| | |
|---|---|
| Prudential Ins. Co. N.A. | $ 67,660,226.00 |
| Aetna Life and Casualty Co. | 11,606,908.00 |
| Metropolitan Life Ins. Co. | 8,213,976.00 |
| The Travelers Ins. Co. | 2,464,191.00 |
| The Mutual Life Ins. Co. N.Y. | 1,642,794.00 |
| St. Regis Paper Co. | 556,861.00 |
| Chembond Corp. | 448,331.54 |

Prudential is by far the largest unsecured creditor of any of the Manville companies.

Court approved appointment of a creditors' committee to represent the non-asbestos-related unsecured creditors of all debtors, and a separate committee to represent asbestos claimants. The complexity of the issues involved in settling the asbestos claims is, of course, staggering.

The Forest Creditors applied to the Bankruptcy Court for appointment of a separate committee of creditors of Forest Products. On September 30, 1982 the Bankruptcy Court found this request premature and directed the parties to prepare for a hearing on whether the Forest Products reorganization should proceed separately. Discovery on the relationship between Forest Products and the other debtors has proceeded, and counsel represent that it is nearly complete, but no hearing on the subject has been scheduled. No motion for substantive consolidation has been made.

### 2. The five extensions granted

Meanwhile, December 24, 1982 was the end of the 120-day period provided by 11 U.S.C. § 1121 during which the debtor has the exclusive right to file its reorganization plan. All the debtors by a joint application sought an extension of the period, pursuant to § 1121(d), which provides that "On request of a party in interest after notice and a hearing, the Court may for cause reduce or increase" the period of exclusivity. The Forest Creditors opposed the request as to Forest Products, urging that any reorganization of that healthy and wealthy company was a simple matter which did not warrant an extension.

After hearing counsel, the Bankruptcy Court granted a 60-day extension on December 21. The Court emphasized that the debtors would "pay for" the extension and that the price would be "hard bargaining, good faith on a conceptual basis of a plan."

The debtors moved again on February 7, 1983 for a further 60-day extension. This time the Forest Creditors proposed a plan

of reorganization for Forest Products and requested an evidentiary hearing on the justifications for the extension of time. The Bankruptcy Court refused to consider their proposals and granted a 45-day extension. This order is the subject of No. 83 Civ. 1522.

In response to the Forest Creditors' contention that the Forest Products reorganization ought not to be delayed, the Court remarked that "the separateness of Forest Products is [not] germane to the subject of an extension." The Court also made reference to the fact that Forest Products represents a major component of the assets of the Manville companies.

On April 6, 1983, the Bankruptcy Court granted a further 45-day extension which is the subject of No. 83 Civ. 2367. The Forest Creditors again protested the extension and this time offered a plan of reorganization for Forest Products. The offer was rejected. As to the extensions, the judge found "substantial progress," and hence "cause," based essentially on the representations of counsel for various parties that discussions had taken place.

On May 23, 1983, the Bankruptcy Court granted a 30-day extension which is the subject of No. 83 Civ. 4195. The Judge rejected the Forest Creditors' opposition and their request that this extension, if granted, be the last. The Court granted the extension, without indicating a basis for a finding of cause.

The most recent 30 day extension was granted on June 23, 1983 and is the subject of No. 83 Civ. 4860.

\* \* \*

After the second extension and each subsequent extension, the Forest Creditors sought relief in this court by appeal. A number of interested parties have responded. Papers opposing the appeals have been filed by the equity holders' committee, the official unsecured creditors committee and the debtors.[3]

**3.** No creditor of Forest Products has opposed the relief sought in these actions. Nor has the committee representing asbestos claimants. Bankers Trust Company, the largest secured creditor of Forest Products, supports Prudential's application. The Securities and Exchange Commission opposes withdrawal of the reference.

## DISCUSSION

The Forest Creditors appeal from the orders extending the period of debtor exclusivity under 11 U.S.C. § 1121. Under the statutory scheme, the debtor is given 120 days during which it has the exclusive right to propose a plan of reorganization. If it fails to do so, creditors may submit their own plans for reorganization. Section 1121(d) provides that extensions of the period of the debtor's exclusivity may be granted only on a showing of "cause". See H.Rep. No. 595, 95th Cong.2d Sess. 231 (1978); S.Rep. No. 989, 95th Cong.2d Sess. 118 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. See generally Matter of Lake in the Woods, 10 B.R. 338 (E.D.Mich. 1981). The Forest Creditors argue that the extensions continuing the exclusivity of Forest Products' right to file a plan are unwarranted and prejudicial. They argue also that the Bankruptcy Judge has utilized an incorrect standard for determining the existence of "cause." They argue they should now be entitled to submit their own plan.

The arguments advanced by the Forest Creditors are powerful. They rely primarily on the following:

First, Forest Products is a concededly solvent company, with nearly a half billion dollars in net worth. It faces no liability for asbestos claims as it has no involvement in the asbestos business.

Second, its lenders loaned to Olinkraft, when it had no connection with Manville. These lenders looked to the independent credit of Olinkraft without any reliance on Manville support. Forest Products remains fully credit worthy on the basis of its own balance sheet. These lenders have apparently not relied on Manville in connection with the credit. See Flora Mir Candy Corp. v. R.S. Dickson & Co., 432 F.2d 1060 (2 Cir.1970).

Third, the Forest Creditors assert that Forest Products has maintained its separate existence after its acquisition. They argue this is not "the rare case" where consolidation becomes warranted because of the intertwining of the previously separate members of a corporate family. Chemical Bank New York Trust Co. v. Kheel, 369 F.2d 845, 847 (2 Cir.1966). See generally Conti, An Analytical Model for Substantive Consolidation in Bankruptcy Cases, 39 Bus.Law 855 (1983). What is more, they point out that the lenders have consistently exercised their rights under the covenants of the loan agreements to prevent any consolidation of Forest Products with any of the Manville companies.

Putting all of this together, the Forest Creditors make a powerful argument that they are seriously and unfairly prejudiced by having had their solvent creditor improperly and unnecessarily sucked into the mess of the Manville reorganizations. The Manville companies' ownership of the Forest Products stock entitles them to dispose of that stock but does not entitle them, or their creditors, to reach down into Forest Products assets, in derogation of the contractual rights of Forest Products' creditors.

The Manville Companies and the General Creditors' Committee vigorously oppose the Forest Creditors, apparently hoping to do them out of their preferred position with respect to the Forest Products assets. In spite of this vigorous opposition, the affidavits submitted in opposition to the Forest Creditors have cast little doubt on the correctness of the three points they assert. The argument that Forest Products is situated similarly to John Manville's because of a small number of suits against it for injuries caused by formaldehyde seems little more than a nimble contrivance.

Although, of course, the issue has not been tried, and it would be premature to reach a judgment on it, it seems most unlikely that Manville and the General Creditors will succeed in overcoming the Forest Creditors' position, given the weakness of their submissions in opposition.

Furthermore, there appears to be considerable merit to the Forest Creditors' contention that the Bankruptcy Judge has improperly diluted the standard of "cause", as justification for extensions of the debtor's exclusive prerogative to offer a plan. Although the Bankruptcy Judge's findings on

this have been quite informally expressed, it appears he has found the making of some progress in discussion to constitute cause justifying extensions. In the context of the other Manville Companies, this may well be sufficient. The argument of the Forest Creditors, however, that they suffer serious prejudice from their inability to offer a plan is quite compelling. I think it doubtful whether the making of some progress generally with respect to the *other* Manville Companies is cause to extend the duration of *Forest Products'* period of exclusivity. No substantial showing has been made that the creditors of other Manville companies have any lawful claim on Forest Products' assets. It is not clear that any cause has been shown why Forest Products' period of exclusivity should be extended.

In spite of these observations, I am not prepared to conclude that these actions of the Bankruptcy Judge to date have been in error. The sheer mass, weight, volume and complication of the Manville filings undoubtedly justify a shakedown period. The overall complication has perhaps itself constituted "cause" up till now for extensions. Now, however, the initial 120 days plus the five extensions granted have allowed time for the smoke to clear. What the clearing of the smoke reveals is the curious and probably inappropriate posture of the asset-rich Forest Products enmeshed in the essentially unrelated reorganization of Johns Manville. I believe it is time to focus attention on the question of cause relating specifically to Forest Products, rather than generally across the Manville board.

The Forest Creditors also apply for withdrawal of the reference under EBR I (c)(2). They have made no case for it, and the motion is denied.[4]

The motions to consolidate are granted and all four actions are dismissed.[5] The clerk is directed to enter judgment dismissing the actions.

SO ORDERED.

---

**4.** I have considered the Forest Creditors' contention that *Northern Pipeline Construction v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), requires particularly close oversight of the Bankruptcy Court's actions in this reorganization. It does not alter my conclusions. The rights at issue on these motions involve the administration of bankruptcy proceedings and not the adjudication of the substantive rights of third parties. Furthermore they involve issues arising under federal statutes, and not state created rights. This delegation of authority thus stands on a different constitutional footing from *Marathon, id.* 102 S.Ct. at 2874–78 (plurality opinion); *id.* at 2878–79 (Rehnquist, J., concurring). *Compare White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254 (6th Cir.1983) and *In re Braniff Airways,* 700 F.2d 214 (5th Cir.1983) *with 1616*

*Reminc Limited Partnership v. Atchison & Keller Co.,* 704 F.2d 1313 (4th Cir.1983).

**5.** In view of my disposition of these appeals, it is not necessary at this time to pass on the appealability of extensions of time. Such orders have not generally been thought appropriate for interlocutory appeal from bankruptcy. *In re Radtke,* 411 F.Supp. 105 (E.D.Wis.1976); *In re Den-Col Cartage & Distribution, Inc.,* 20 B.R. 645, 647 (D.Colo.1982) (dictum). I note, however, that applications for leave to appeal are addressed to the discretion of the District Court and should be liberally granted where it can help the expeditious resolution of the case. *In re New Haven Radio, Inc.,* 23 B.R. 762 (S.D. N.Y.1982); *see Maiorino v. Branford Savings Bank,* 691 F.2d 89, 91 (2d Cir.1982).