**In the Matter of RAINBOW FOREST APARTMENTS, A Limited Partnership, Debtor.**

**Bankruptcy No. 82–04188A.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Sept. 16, 1983.

Robert N. Meals, Atlanta, Ga., for debtor.

F.M. Bird, Jr., Alston & Bird, Atlanta, Ga., for creditor First Federal of Michigan.

## MEMORANDUM OF OPINION

A.D. KAHN, Bankruptcy Judge.

The above-styled bankruptcy matter is before the Court on the issue of whether the Debtor's proposed plan of reorganization should be approved. First Federal of Michigan [First Federal], the Debtor's largest creditor, filed an objection to the plan. A hearing on confirmation and First Federal's objection was held on June 7, 1983 at which time the Court heard testimony and arguments of counsel. The matter was then taken under advisement.

### I. Debtor's Proposed Plan

In its plan, the Debtor proposes to pay, with the exception of the claim of First Federal, all uncontested claims in full upon the effective date of the plan. First Federal has a claim for approximately $2,625,-000.00 which is secured by a Deed to Secure Debt on the Debtor's real property. Upon confirmation, the Debtor proposes to cure

and reinstate the indebtedness according to the terms of certain notes executed by the Debtor and dated February 7, 1977 and June 18, 1979. In addition, the Debtor's plan provides for the payment of "reasonable attorney's fees and costs incurred up to May 2, 1983 arising out of its default, with such amount to be determined by the Court pursuant to an evidentiary hearing on this subject." Debtor's Plan of Reorganization at 3.

The plan is to be funded by Allen Aaronson who currently holds a 62% interest in the Debtor as a limited partner. The plan provides that he will acquire an additional 36% interest in consideration of his funding the plan and that he will remain a limited partner. His brother, Jules Aaronson, will receive a 2% interest in the Debtor and will replace Stanley Melnick as the general partner. Jules Aaronson will manage the Debtor's property, which consists of an apartment complex.

### II. First Federal's Objections to Debtor's Plan

First Federal makes several objections to the plan, to wit: 1) that the Debtor solicited acceptances without prior court approval in violation of 11 U.S.C. § 1125(b); 2) that the plan was not proposed in good faith; and 3) that First Federal's claim is impaired in that the plan does not provide for certain damages to which First Federal asserts it is entitled.

The first two objections involve a transaction in which Jules Aaronson purchased from Atlanta Commercial Realty, Inc. [ACR] its claim against the Debtor. Despite First Federal's allegations of self-dealing on the part of the Debtor and being "deprived" of an alternative plan,[1] the Court finds no evidence of any wrongdoing or bad faith by the Debtor. During the hearing, First Federal also questioned the feasibility of the plan as it relates to Jules Aaronson's ability to manage the apartment

1. The alternative plan was to have been proposed by ACR, but it was never formalized or put into writing. From the testimony in court, it is clear that the plan was never finalized because First Federal and ACR were not able to reach an agreement as to the terms of the plan.

complex. The Court heard testimony that Aaronson owns and successfully manages over 4,000 rental units of which 80% are in the metropolitan Atlanta area. Based on this fact and other testimony from Aaronson and his son Glenn Aaronson, who works for Jason Property Management Co., the Court finds that the plan is feasible and that there can be no question regarding Jules Aaronson's ability to manage the Debtor's property.

Finally, First Federal argues that its right to accelerate and to demand immediate payment upon default was an integral part of its original bargain with the Debtor. First Federal contends that the plan impairs this right and that

> unless the Court recognizes *this loss* as that being a part of the damages under 11 U.S.C. § 1124(2)(C), then to the extent that § 1124(2)(C) effectively negates the right to accelerate and foreclose, or to realize equivalent value (limited, of course, by the debt), then such construction renders 11 U.S.C. § 1124 unconstitutional in violation of the Fifth Amendment as a deprivation of property without just compensation or due process.

Brief of First Federal at 5–6. The Court notes that the cure and reinstatement of a mortgage is clearly contemplated by the Code in § 1124, *see Midland Mutual Life Ins. Co. v. Masnorth Corp. (In re Masnorth Corp.),* 28 B.R. 892 (Bkrtcy.N.D.Ga.1983) (Drake, J.); *Ketchikan Lodge No. 1429 v. Hewitt (In re Hewitt),* 16 B.R. 973 (Bkrtcy. D.Alaska 1982), and that, upon cure and reinstatement, "the event of default is remedied and the consequences are nullified." *Taddeo v. DiPierro (In re Taddeo)* 685 F.2d 24, 9 B.C.D. 556, 561 (2nd Cir.1982).

Therefore, the only issue remaining is whether the Debtor's plan provides for damages which will satisfy § 1124(2)(C).

Section 1124(2)(C) states that:

Except as provided in section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan—

> (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—

> (C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law;

First Federal argues that the difference between the value of the loan amount reloaned at today's current market rate[2] and the value of the loan at the contract rate[3] is $370,000.00.

The Court finds that this "loss" is not the type of compensatory damages contemplated by § 1124(2)(C). To award such damages would clearly be counterproductive to Congress' scheme to allow for the reorganization and rehabilitation of debtors in distress.

> The intervention of bankruptcy and the defaults represent a temporary crisis which the plan of reorganization is intended to clear away. The holder of a claim or interest who under the plan is restored to his original position, when others receive less or get nothing at all, is fortunate indeed and has no cause to complain. Curing of the default and the assumption of the debt in accordance with its terms is an important reorganization technique for dealing with a particular class of claims, especially secured claims.

Notes of Committee on the Judiciary, Senate Report No. 95–989. The same argument for damages under § 1124(2)(C) was raised in *In re Rolling Green Country Club,* 26 B.R. 729 (Bkrtcy.D.Minn.1982). In rejecting the creditors contentions, the Court stated "[i]t would seem fruitless indeed if the debtor is required in order to enjoy the benefit of this section to pay the total ex-

---

**2.** At the date of the hearing, the current secondary market rate was 12.5%.

**3.** 8.5%

pected present economic cost of retaining or restoring the maturities provided in the instrument." *Id.* at 733.

Turning now to First Federal's assertion that its constitutional rights are violated by the above interpretation of § 1124(2)(C), the Court finds this contention to be without merit.

It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way.

*Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). First Federal has not met that burden.

First Federal relies on the case of *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), in which the Supreme Court held that the Frazier-Lemke Act of 1934 was unconstitutional. That Act empowered the Court to grant a farmer a five year immunity from foreclosure of a mortgage, permitted the farmer to retain possession of the real estate, for reasonable rental, and to purchase the real property free and clear of the mortgage at the expiration of the five year period upon payment of an amount set by the Court. The Supreme Court held that these provisions were "so unreasonable, capricious and arbitrary that the Land Bank [was] deprived of its property without due process of law." *Id.* at 561, 55 S.Ct. at 854. It was the taking of the above rights *as a group* which the Court held to be unconstitutional. *Wright v. Vinton Branch,* 300 U.S. 440, 446, 57 S.Ct. 556, 556, 81 L.Ed. 736 (1937). Furthermore, there is serious question as to whether *Radford* has any current precedential value.[4]

 The Court can find no taking of First Federal's property in violation of the Fifth Amendment. By the cure and rein-

statement, the parties are returned to their original, pre-default status. The provisions in the note allowing acceleration remain a part of the contract between the parties. That Congress allows a court to prevent a creditor from taking advantage of such a contractual right upon one instance of default does not create a "taking" within the meaning of the Fifth Amendment. Therefore, the Court finds the damages provided for in the Debtor's plan are sufficient to satisfy § 1124(2)(C) and, thus, First Federal's claim is unimpaired.

### III. *Confirmation of Plan*

The Debtor's plan has been proposed in good faith, is in the best interest of all parties, and is feasible. The Court further finds that all of the requirements of § 1129 have been met. Therefore, the plan is confirmed, and First Federal's objection is denied. A hearing shall be held on the issue of the amount of damages, if any, to which First Federal is entitled under § 1124(2)(C).

An Order is entered contemporaneously herewith.

---

4. "The substantive due process concept upon which it is bottomed is discredited and moribund." *Thorp Credit and Thrift Co. v. Pom-* *merer (In re Pommerer)* 10 B.R. 935, 945 (Bkrtcy.D.Minn.1981).