**In re KIZZAC MANAGEMENT CORPORATION, Debtor.**

**Bankruptcy No. 83 B 11033.**

United States Bankruptcy Court, S.D. New York.

Nov. 21, 1984.

Booth, Lipton & Lipton, New York City, for debtor; Marc Richards, New York City, of counsel.

Finkel, Goldstein & Berzow, New York City, for Second Mortgagees; Neal M. Rosenbloom, New York City, of counsel.

## DECISION AND ORDER ON OBJECTION TO CONFIRMATION

BURTON R. LIFLAND, Bankruptcy Judge.

In this somewhat typical "real estate chapter 11 proceeding" the pre-petition tensions between mortgagor and mortgagee continue unabated from date of filing through date of confirmation. The debtor having successfully interdicted an all but ultimate foreclosure proceeding now seeks, through the felicitous provisions of title 11 U.S.C. and external funding, to emerge stabilized and rehabilitated from bankruptcy. In the debtor's view the emergence from chapter 11 leaves the second mortgage in its same pre-petition ranking with all defaults cured. The second mortgage holders, who are the prior owners and the objectants herein, disagree. The increasing value of the property in question has made each of these protagonists most eager to control and capitalize on its economic potential.

This decision represents the final part in a trilogy of recent decisions rendered by this Court dealing with the issue of interest on interest. The first decision, *In re Forest Hills Associates*, 40 B.R. 410 (Bankr.S.D.N.Y.1984), dealt with the availability of pre-petition interest on interest. The principles of cure and reinstatement underlying that decision were also explored in *In re Manville Forest Products Corp.*, 43 B.R. 293 (Bankr.S.D.N.Y.1984), which also dealt with post-petition interest on interest. In this decision, the Court will further expand upon its exploration of the concept of interest on interest in the context of an oversecured creditor.

Five individuals, Ron Morgan, Irving Rosenblum, Rhoda Rosenblum, and Bernard Rose (collectively "the second mortgagees") object to confirmation of the amended plan of reorganization submitted by Kizzac Management Corporation, the debtor in possession ("Kizzac"). The primary thrust of the objection is that by failing to provide interest on pre-petition defaulted second mortgage interest installments and other monetary defaults, and by providing for a reconstituted first mortgage, the plan falls short of the requirements of sections 1124 and 1129 [1] of the Bankruptcy Reform Act of 1978 ("the Code"), and thus the claims or interests of the second mortgagees are not statutorily accommodated.

---

**1.** On July 10, 1984, the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353 ("Bankruptcy Amendments") was enacted. The Bankruptcy Code provisions governing this case are not affected by the Bankruptcy Amendments. *See* Pub.L. No. 98–353, § 553(a).

Code § 1124 defines impairment of claims or interests and provides in part:

Except as provided in section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan—

(1) leaves unaltered the legal, equitable, and contractual rights [of the holder];

(2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—

(A) cures any such default ...;

(B) reinstates the [pre-default] maturity of such claim or interest ...;

(C) compensates the holder ... for any damages incurred as a result of any reasonable reliance ... on such contractual provision or such applicable law; and

(D) does not otherwise alter the [holder's] legal, equitable, or contractual rights....

## I. *Background Facts*

On August 6, 1980 Kizzac purchased the premises located at 214 West 72nd Street, New York, New York, from the second mortgagees' assignor and predecessor in interest 214 West 72nd Street Realty Corp. ("Realty Corp.").[2] The premises consist of a five-story apartment building with two commercial units and seven residential units. At the time of the purchase, the premises, which are the primary asset of the estate and its only source of income, were already encumbered by a first mortgage in the principal amount of $63,793.26, due three months later on November 1, 1980. Kizzac assumed the first mortgage and executed a purchase money second mortgage to the vendor Realty Corp. in the amount of $350,206.74. Kizzac defaulted on the November 1, 1980 final payment of the first mortgage, and on February 6, 1981, when it failed to make a monthly installment, defaulted under the second mortgage as well. On March 30, 1981, with both mortgages in default, the second mortgagees acquired the second mortgage by assignment from Realty Corp. On May 19, 1981, the second mortgagees or their children or siblings, acquired the first mortgage by an assignment from the first mortgagee for payment of an amount equal to the then-outstanding balance, $63,793.26. The precise identity of the first mortgage acquires remains unclear from the record submitted. Nevertheless it is not controverted that the source of payment came from among the personnel of the second mortgagees. As is usually the case, the terms of the second mortgage entitled the second mortgagees to protect their security interest by covering defaults. No satisfaction of the first mortgage ever was given.

Thus the second mortgagees remain descriptively so ranked.

The second mortgagees were entitled, upon default, to declare the second mortgage indebtedness immediately due and payable. They elected to exercise this right and commenced a foreclosure proceeding in Supreme Court, New York County. Summary judgment was granted in favor of the second mortgagees but entry of judgment of foreclosure was stayed pending a trial on Kizzac's counterclaims. After trial, all of Kizzac's counterclaims were dismissed.

On July 12, 1983 Kizzac filed its petition for reorganization under chapter 11 of the Code. The second mortgagees contend that Kizzac filed its petition in order to receive the protection of the Code § 362(a)(4) automatic stay[3] which would suspend entry of and execution on the state court foreclosure judgment. As of the date its petition was filed, Kizzac was in default on second mortgage installments totalling $73,063.03 exclusive of interest, representing twenty-nine installments due between February 6, 1981 and June 6, 1983. Other defaults, all accruing pre-petition, include the $63,793.26 paid by the second mortgagees to acquire the first mortgage, and $4,273.87 *in rem* expenses paid to prevent foreclosure for overdue real estate taxes, water and sewer rents.

Kizzac filed its amended plan of reorganization ("the plan") with the Bankruptcy Court on January 17, 1984.[4] In the plan, the debtor designated the second mortgagees as class four secured claim holders. The plan provides that the second mortgage and Note will be reinstated on the effective date of the plan; that all monetary defaults in the second mortgage and

---

**2.** The second mortgagees were partners in Realty Corp. and thus are former owners of the subject premises.

**3.** Code § 362(a)(4) provides:
(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section (a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay, applicable to all entities, of—

(4) any act to create, perfect, or enforce any lien against property of the estate;

**4.** Kizzac subsequently filed a second amended plan of reorganization on May 16, 1984. The sole change from the amended plan of reorganization is to provide that unsecured creditors will receive 100% of their allowed claims, 50% in cash on the effective date and 50% in cash six months later.

Note not cured during the pendency of the case will be cured by cash payment in full on the effective date of the plan; that the maturity of the second mortgage will be reinstated to its pre-default state; and that the debtor will pay the balance of the second mortgage and Note in accordance with the terms of such allowed secured claim without penalty. In its disclosure statement, Kizzac asserts that the second mortgagees will not be impaired under the plan.

On September 13, 1983, the second mortgagees moved by Order to Show Cause for, *inter alia,* an order (1) vacating the automatic stay so that they could continue with their state foreclosure action; and (2) directing Kizzac to provide adequate protection of the second mortgagees' interest. After argument was heard, this Court ruled that the stay should not be lifted in view of Kizzac's equity in the property. An Order was entered on October 5, 1983 directing Kizzac to provide adequate protection under Code § 361 [5], by making current payments of principal and interest under the second mortgage and by paying all real estate taxes, sewer and water rents.

## II. *Parties' Contentions*

The second mortgagees' objections to confirmation of the plan are twofold. They contend that the second mortgage cannot be cured and reinstated in accordance with Code § 1124(2)(C) unless they receive interest on all unpaid pre-petition arrears of interest as well as principal under the second mortgage. The second mortgagees assert that having lost the opportunity to invest their money at a favorable interest rate, they are impaired under the plan unless they are compensated for that loss.

Next, the second mortgagees assert that the plan provision for a realigned first mortgage in favor of the debtor's president Justin Korn (the "plan funder") to secure loans he previously made and those he must infuse to fuel the plan, would undermine the second mortgagees' interest in the property. In addition, they claim that the granting of this mortgage contravenes Code § 364 because no financing order was sought or obtained. The second mortgagees' final objection to the proposed realignment is based on their assertion that this Court lacks the authority to compel the first mortgagees or their nominees to give up their first mortgage in favor of Korn. The second mortgagees insist that they are only required to give satisfaction of the mortgage.

Kizzac asserts that the second mortgagees are not entitled to interest on defaulted interest payments under the second mortgage either pursuant to its terms or pursuant to New York law. Further, the debtor contends that because the second mortgagees are not entitled to interest on interest they cannot prove damages under Code § 1124(2)(C). Because they are not impaired, claims Kizzac, the second mortgagees are deemed under Code § 1126(f) [6] to have accepted the plan.

Regarding the propriety of the restructured first mortgage in favor of Korn, Kizzac notes that this event was expressly contemplated in the provisions of the second mortgage, thus it is not an alteration of contractual rights envisioned in Code § 1124(2)(D). The debtor asserts that the proposed placement of the first mortgage in Korn's hands merely substitutes Korn for some other possible third party.

---

**5.** Code § 361(1) provides in part:

When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—

(1) requiring the trustee to make periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364

of this title results in a decrease in the value of such entity's interest in such property.…

**6.** Code § 1126(f) provides:

Notwithstanding any other provision of this section, a class that is not impaired under a plan is deemed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interest of such class is not required.

Neither party disputes that the fair market value of the premises exceeds the value of the second mortgagees' security interest and that they are therefore oversecured. Also, both parties agree that the second mortgagees are entitled to reasonable attorney's fees; only the amount of those fees is disputed.

### III. *Issues Presented*

The outcome of this controversy and ultimately the confirmation of the plan revolves around the determination of two issues. First, whether "lost opportunity cost" or interest on interest, is an actual pecuniary damage under Code § 1124(2)(C). Second, whether the proposed first mortgage status for Korn impairs the second mortgagees' interest. For the following reasons, this Court finds: (1) that the second mortgagees are not entitled to interest on defaulted second mortgage interest payments; (2) that the second mortgagees are not "impaired" under the plan as that term is used in Code § 1124; (3) that the second mortgagees are therefore deemed to accept the plan; (4) that the realignment of Korn as the first mortgagee mechanically accomplished by an equitable reassignment does not impair the second mortgagees' rights under Code § 1124(2)(D); (5) that this Court has the power to approve any realignment under the first mortgage necessary to effectuate the debtor's reorganization; and (6) the second mortgagees are entitled to reasonable attorney's fees.

### IV. *Discussion of Law*

#### A. *"Lost Opportunity Costs" or Interest on Interest*

The second mortgagees use the terms "lost opportunity costs" and "interest on

interest" interchangeably. The terms are similar but not synonymous. Their applicability will be discussed seriatim.

#### 1. *Lost Opportunity Costs*

■ The second mortgagees claim that they are impaired under the plan because, by its failure to pay interest on the pre-petition interest in addition to principal arrearages, the plan fails to compensate them "for any damages incurred as a result of any reasonable reliance" on any acceleration clause or other applicable law. The concept of "impairment" of a claim or interest under a debtor's plan of reorganization is defined by Code § 1124. This section provides that a claim is impaired under a plan of reorganization unless the plan (1) does not alter any of the claimant's contractual rights; (2) cures any default; (3) reinstates the maturity of a claim to its pre-default status and (4) compensates the claimant for damages incurred due to his reasonable reliance on a particular contractual provision or applicable law.

The second mortgagees have not argued that they actually relied on any clause or applicable law. Rather, their argument is that interest on the aggregate overdue installments is necessary to replace their "lost opportunity costs," i.e., profits that could have been made by investing timely paid interest installments.[7] As the issues dealing with interest on interest discussed in this Court's earlier decisions also guide the Court today, it is appropriate to reiterate them.

■ In a widely followed opinion, *In re Taddeo*, 685 F.2d 24 (2d Cir.1982)[8] the Second Circuit established that the concept of curing defaults under Code § 1124 neces-

---

7. The second mortgagees do not question Kizzac's statutory right to cure defaults and reinstate the second mortgage. Neither do they claim interest at any special post-maturity or market rate, or on the entire accelerated debt, issues addressed by this Court in *In re Forest Hills Associates*, 40 B.R. 410 (Bankr.S.D.N.Y. 1984) and in *In re Manville Forest Products Corp.*, 43 B.R. 293 (Bankr.S.D.N.Y.1984).

8. Although *Taddeo* was a chapter 13 case, the principles enunciated therein have been held to apply equally in a chapter 11 reorganization. *See, e.g., Valente v. Savings Bank of Rockville*, 34 B.R. 362, 363 (D.Conn.1983); *In re Manville Forest Products Corp.*, 43 B.R. 293 (Bankr.S.D.N. Y.1984); *In re Forest Hills Assoc.*, 40 B.R. 410 (Bankr.S.D.N.Y.1984); *In re Masnorth Corp.*, 36 B.R. 335 (Bankr.N.D.Ga.1984); *In re Rainbow Forest Apartments*, 33 B.R. 576 (Bankr.N.D.Ga. 1983).

sarily includes the power not only to "deaccelerate" and reinstate the original terms of a debt, but also to restore the relative positions of the parties to their pre-default state. "A default is an event in the debtor-creditor relationship which triggers certain consequences—here, acceleration. Curing a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified. This is the concept of 'cure' used throughout the Bankruptcy Code". *Id.* at 26–27. Although the creditor's rights arising out of acceleration are in fact affected by cure and reinstatement, they are deemed unimpaired. *See, e.g., In re Forest Hills Assoc.*, 40 B.R. at 414; *In re Madison Hotel Assoc.*, 29 B.R. 1003, 1006 (Bankr.W.D.Wis.1983); *In re Masnorth Corp.*, 28 B.R. 892, 894 (Bankr.N.D.Ga. 1983) [hereinafter *Masnorth I*]; *In re Barrington Oaks Gen'l Partnership*, 15 B.R. 952 (Bankr.D. Utah 1981).

Congress considered and did not find any inequity in not compensating for lost opportunity costs. As the court stated in *In re Rainbow Forest Apartments*, 33 B.R. 576 (Bankr.N.D.Ga.1983):

> The intervention of bankruptcy and the defaults represent a temporary crisis which the plan of reorganization is intended to clear away. The holder of a claim or interest who under the plan is restored to his original position, when others receive less or get nothing at all, is fortunate indeed and has no cause to complain. Curing of the default and the assumption of the debt in accordance with its terms is an important reorganization technique for dealing with a particular class of claims, especially secured claims.

*Id.* at 578 (quoting *Notes of Comm. on the Judiciary*, S.Rep. No. 989; 95th Cong., 2d Sess. 120, *reprinted in* 1978 U.S.Code Cong. and Ad.News 5787, 5906.) Therefore, to award lost opportunity costs as damages in a cure and deacceleration situation would contravene Congress' intent. For, as this Court stated in *In re Forest Hills Associates*, 40 B.R. 410:

It is thus clear that Code section 1124(2) provides the debtor in distress with the statutory tools necessary to effect a total healing of the scars of contractual default, by placing the parties into the same position they were in immediately before the default occurred. This healing is accomplished by paying the creditor whatever monies he would have received under the contract had the debtor not defaulted.... The creditor is, nevertheless, rightfully categorized as unimpaired, for he is returned to the same position he was in immediately prior to the default, and is thereby given the full benefit of his original bargain.

*Id.* at 415. *See also In re Masnorth Corp.*, 36 B.R. 335, 340 (Bankr.N.D.Ga.1984) [hereinafter "Masnorth II"]; *Masnorth I*, 28 B.R. at 896.

The second mortgagees nevertheless argue that they suffered damages by not being able to invest timely paid installments of interest, and that lost opportunity costs would ameliorate that loss. As this Court indicated in *In re Manville Forest Products Corp.*, "this 'loss' is not the type of compensatory damages contemplated by § 1124(2)(C). The compensation which [that section] considers clearly must arise out of reasonable reliance by a creditor on a contractual provision or other related law." *Id.*, 301. Thus, whether the loss flows from being denied the opportunity to reinvest timely made interest payments in a default situation or from being denied compound interest on payments that were due before acceleration, the litmus test for awarding damages under section 1124 is the same: reliance on an existing contractual provision or applicable law. The second mortgagees have failed to show that their claimed lost opportunity cost "damages" arose out of their reliance on any contractual provision or applicable law as required by Code § 1124(2)(C). Whether they are entitled to interest on defaulted, pre-petition interest payments remains to be examined.

502

### 2. Interest on Defaulted, Pre-Petition Interest Installments

 The second mortgagees assert that interest is due on the interest as well as on the principal of Kizzac's defaulted pre-petition second mortgage installments. Although it is difficult to understand why, they rely for this proposition on paragraph 20 of the second mortgage. That paragraph provides:

> If default be made in the payment of *any interest or installment when due or if default be made in the terms or covenants upon any prior mortgage* or mortgages *which may be a superior loan* [sic] upon the premises and the default continue for a period of ten (10) days, *the holder of this mortgage shall have the right to pay such interest or installment and the amount so paid, with interest thereon,* may be added to the indebtedness secured hereby and shall be a lien upon said premises and collected as part of the debt accrued by this mortgage.

(Emphasis added.)

Kizzac contends that the inclusion of an express provision for interest on defaulted interest or installments under the *first* mortgage demonstrates the parties' intent that no interest on defaulted interest or installments under the *second* mortgage was contemplated under the second mortgage absent such an express clause. Although Kizzac's conclusion is correct, the reasoning upon which it is based is not. The plain meaning of paragraph 20 is to entitle the second mortgagees to interest on expenditures they make to cure any defaults under the *first* mortgage, and that such advances serve only to increase the junior mortgage principal.

Paragraph 20 must be read with paragraph 21, which entitles the second mortgagees to accelerate the entire debt secured by the second mortgage if any such payment is made. Nothing in either paragraph deals with the second mortgagees' entitlement to interest on defaulted interest payments under the *second* mortgage.

It would have been more logical, albeit no more favorable to the second mortgagees, for them to look to state law in determining their entitlement to interest on interest.

To determine when interest is required to cure defaults, this Court follows *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946). In *Vanston* the Supreme Court stated that in the absence of overriding federal policy state law will determine the allowability of interest accruing on claims before the petition is filed. *Id.* 329 U.S. at 161, 67 S.Ct. at 239. There is no question that New York law controls the issue of prepetition interest on interest in this case. The second mortgage was executed in New York; the premises are located in New York, and the parties reside in New York. New York law, however, does not provide for interest on interest. "For over a century the New York Court of Appeals consistently has held that a contractual provision to pay interest on interest is void under the law of New York." *Debentureholders Protective Committee of Continental Investment Corporation v. Continental Investment Corporation*, 679 F.2d 264, 268 (1st Cir.), *cert. denied*, 459 U.S. 894, 103 S.Ct. 192, 74 L.Ed.2d 155 (1982). *See also Madison Personal Loan, Inc. v. Parker*, 124 F.2d 143, 145 (2d Cir.1941); *In re Forest Hills Assoc.*, 40 B.R. 410, 416 (Bankr.S. D.N.Y.1984); *In re Webb*, 29 B.R. 280, 285 (Bankr.E.D.N.Y.1983); *Newburger-Morris Co. v. Talcott*, 219 N.Y. 505, 510, 114 N.E. 846, 847 (1916); *Young v. Hill*, 67 N.Y. 162, 167–69 (1876); *Stewart v. Petree*, 55 N.Y. 621, 623 (1874); *Giventer v. Arnow*, 44 A.D.2d 160, 161, 354 N.Y.S.2d 162, 164 (3d Dep't 1974), *rev'd on other grounds*, 37 N.Y.2d 305, 333 N.E.2d 366, 372 N.Y.S.2d 63 (1975). Therefore, the second mortgagees may not recover interest on the defaulted, pre-petition second mortgage interest payments pursuant to state law. In accordance with the general principles of cure and reinstatement Kizzac's plan provides that the second mortgagees will receive the benefit of their original bargain—a sum equal to the total of defaulted

installments, principal and scheduled interest combined.

## B. *The First Mortgage Position Given to Korn*

The second mortgagees further assert that they are impaired because the plan displaced them from first position by its proposed realigned first mortgage in Korn's favor. Although the second mortgagees contend that they made the final payment under the first mortgage and thereby moved up, nowhere is it indicated, in papers or through testimony, when this event occurred. As observed previously no satisfaction piece has been given. Indeed, the assignment to relatives of the second mortgagees is indicative of a recognition that there is a remainder of value in the first mortgage.

■ There is no question that upon the satisfaction of a superior lien, all subordinate lienors move up the ladder. The second mortgagees have failed to establish that they satisfied the first mortgage.

■ The debtor indicates in its disclosure statement and by it proposed treatment of the first mortgage in the plan that there is an outstanding balance that will be paid on confirmation. Because the second mortgagees have failed to object to the plan on this ground, as would be expected if they had paid off the first mortgage debt, and failed to conclusively establish that they made the final payment, the debtor's posi-

tion is assumed to be accurate. Even were it to be held that the second mortgagees were an impaired class, the plan can still be confirmed.[9]

Paragraph 18 of the second mortgage provides:

This mortgage is subject and subordinate to a mortgage covering the within described premises dated November 2, 1980 . . . upon which there is a present balance of $63,793.26 *and to any extensions of said mortgage which may be placed on the premises in lieu thereof* and to any extensions thereof, provided that the interest rate shall not be greater than the then prevailing rate and that if the principal amount thereof shall exceed the amount of principal owing and unpaid on said existing mortgage at the time of placing *such new mortgage* or consolidated mortgage, the excess is to be paid to the holder of this mortgage in reduction of the principal thereof. Such payment shall not alter or affect the regular installments of principal payable hereunder and the holder of this mortgage will, on demand, without charge therefor, execute, acknowledge and deliver any agreement or agreements further to effectuate such subordination.

(Emphasis added.)

This language is not boilerplate, but was specifically added as a rider by the parties. The language clearly contemplates that, subject to the limitations agreed upon, this

---

9. Code § 1129(b), the cram down section, provides that the court must confirm a plan at the request of its proponent "notwithstanding the requirements of [§ 1129(a)(8) ] if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims . . . that is impaired under, and has not accepted, the plan." *Id.* To be "fair and equitable" as to a class of secured claim holders, a plan must provide that: 1) they retain the liens securing their claims and 2) each claim holder receive deferred cash payments worth at least the present value of his claim on the effective date of the plan. *See* § 1129(b)(2)(A).

Because any move by the second mortgagees into first place was always vulnerable to displacement by a substituted first mortgagee, it cannot be said that the plan's treatment of the first mortgage alters any lien the second mort-

gagees may have obtained. In addition, the second mortgagee are being paid value as required by § 1129(b)(2)(A)(i)(II) because the plan intends to pay the full amount of their allowed, secured claim.

Additionally, the second mortgagees lack standing to contend that the plan discriminates unfairly against "unsecured creditors, (if there are any)" in light of the fact that the second mortgagees, themselves secured creditors, are oversecured and therefore will receive the full amount of their claim, $68,701.14 to acquire the first mortgage; $73,060.03 on the second mortgage; $4,273.87 under the in rem agreement plus reasonable attorney's fees, for a total of more than $146,035.04. *See In re Adamson Co., Inc.,* 12 B.C.D. 107, 109, 42 B.R. 169 (E.D.Va.1984). Thus, even if impaired, the objectants are totally vulnerable to cramdown.

first mortgage could be completely restructured or replaced. The second mortgagees will not be heard to complain because they may be dissatisfied with the identity of the realigned first mortgagee.

Analogizing to Code § 510, which provides that "[a] subordination agreement is enforceable in [bankruptcy] to the same extent that [it] is enforceable under applicable nonbankruptcy law," 11 U.S.C. § 510(a), New York recognizes the validity of subordination clauses in mortgages and leases, as well as subordination agreements. *See, e.g., 220 West 42 Assoc. v. The Ronbet Newmark Co.,* 84 Misc.2d 259, 375 N.Y.S.2d 255, *aff'd as modified,* 53 A.D.2d 829, 385 N.Y.S.2d 304 (1st Dep't), *aff'd,* 40 N.Y.2d 1000, 391 N.Y.S.2d 107, 359 N.E.2d 701 (1976); *Stamm v. 481 Realty Corp.,* 94 N.Y.S.2d 75, (Sup.Ct. Kings Co.1949), *aff'd,* 276 A.D. 1106, 97 N.Y.S.2d 374 (2d Dep't 1950). *See also* 38 N.Y.Jur. § 173 at 330–334.

Finally, the Court's authority to compel the first mortgagees to give an assignment of the first mortgage rather than a satisfaction is found in Code §§ 1123(a)(5)(E) and 1142. Code § 1123(a)(5)(E) provides that "a plan shall provide adequate means for [its] execution, such as satisfaction *or modification* of any lien." 11 U.S.C. § 1123 (emphasis added). Paragraph 1123.01[5] in *Collier* indicates that "the plan may propose such actions notwithstanding nonbankruptcy law or agreements." 5 *Collier* ¶ 1123.01[5] at 1123–10. Code § 1142 provides for plan implementation by "direct[ing] ... any ... necessary party to execute or deliver ... any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan." Thus, it is apparent that nothing in the Code, state law or the terms of the mortgage itself prohibit realigning Korn as first mortgagee to secure loans made pre-confirmation (administration claims) and to

be made to the debtor (plan implementation). The second mortgagees have no cause for objection where, as here, they are to receive full repayment of all sums they expended in connection with acquiring the first mortgage.

The second mortgagees' objection that the debtor never sought a financing order under Code § 364 authorizing the pre-confirmation financing is immaterial because by approving the plan, the Court approves the method of financing. The confirmation order is the penultimate financing order. *See generally* Code §§ 1123, 1142 and R. 3020 Rules of Bankruptcy Procedure. Furthermore, in light of the fact that the second mortgagees are oversecured and therefore will receive on confirmation the full amount of their claim, this objection is sham.

C. *Confirmation Standards of § 1129 Are Met*

The certification of acceptances of the debtor's *amended* plan of reorganization submitted by Kizzac's counsel lists the second mortgagees as unimpaired and therefore deemed to accept the plan. The second mortgagees nevertheless claimed that they were impaired thereunder, an assertion they continue to raise with regard to the *second* amended plan.[10]

Code § 1123(b)(1) provides that a plan may "impair or leave unimpaired any class of claims, secured or unsecured, or of interests." With this ability, a debtor can tailor a plan to its exact needs. Code § 1124 deals with impairment of claims or interests and defines a class as impaired unless the plan, with respect to each class member, leaves his contractual rights unaltered, cures any default, reinstates the claim's pre-petition maturity date and compensates the claimant for certain kinds of damages he may have incurred.[11]

An impaired holder may vote its acceptance or rejection of the plan. An unimpaired holder, on the other hand, is deemed

---

**10.** *See* note 4 *supra.*

**11.** 11 U.S.C. § 1124. *See* note 1 *infra.*

by Code § 1126(f) to accept the plan.[12] Determination of a claim holder's status, therefore, is crucial in the context of plan confirmation. *See* 5 *Collier* ¶ 1124.03 at 1124-9-12.

In accordance with the foregoing analysis, the objections to confirmation are hereby overruled. The requirements of Code § 1129 having been otherwise satisfied, it is found pursuant to R. 3020 Bankruptcy Rules of Procedure that the debtor's plan is filed in good faith and not by any means forbidden by law, and is therefore confirmable. A date for the continuation of the confirmation hearing shall be set by the Court to consider, among other elements of case administration, the order of confirmation and the determination of reasonable attorney's fees due to representatives of the second mortgagees.

It is so ordered.

**12.** Code § 1126(f) provides:

Notwithstanding any other provision of this section, a class that is not impaired under a plan is deemed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interest of such class is not required.