## In re ROLLING GREEN COUNTRY CLUB, a Minnesota corporation, Debtor.

Bankruptcy No. 4–82–47(O).

United States Bankruptcy Court, D. Minnesota.

Oct. 1, 1982.

Daryle L. Uphoff and Melvin I. Orenstein of Lindquist & Vennum, Minneapolis, Minn., for debtor.

Paul J. Scheerer and Lorna P. Gleason of Dorsey & Whitney, Minneapolis, Minn., for First Nat. Bank of Minneapolis.

William J. Joanis of Briggs & Morgan, Minneapolis, Minn., for the committee of unsecured creditors.

Robert J. Kressel, Asst. U.S. Trustee, for U.S. trustee.

## MEMORANDUM, INCLUDING FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDERS

KENNETH G. OWENS, Bankruptcy Judge.

Hearing was held before the undersigned on August 11, 1982 to consider confirmation, or its refusal, of two competing plans of reorganization as submitted respectively by the debtor Rolling Green Country Club and First National Bank of Minneapolis, the holder of security interests in the nature of real estate mortgages on the premises of the debtor. The proponent of each plan has objected to confirmation of the other and the committee of unsecured creditors originally objecting to confirmation of each plan is now an objector only as to the plan of First National Bank of Minneapolis having at hearing withdrawn its objection to the plan of the debtor. The debtor's plan in brief proposes to borrow from one Bruce Hendry $467,444.00 of which $325,000.00 would be available to fund its proposed payment plan. The plan proposes to cure an existing default with respect to the interests of First National Bank of Minneapolis and to pay all other classes of interest in full, except leaving in place for payment on due date November 1, 2001 the holders of bonds, building certificates and transferable certificates. The plan of First National Bank contemplates liquidation of the properties of the debtor through the device of the appointment of a liquidating trustee and provides either for surrender of security, or payment of secured creditors and payment of all other interested parties out of the proceeds of liquidation on an effective date defined to be such date as the proceeds of liquidation in the hands of the trustee become sufficient to effect the required payments.

Neither plan purports to impair any class and neither proponent has made a post-petition solicitation with respect to its plan nor filed and obtained approval of a post-petition disclosure as would otherwise be required by Section 1125 of the Bankruptcy Code, (11 U.S.C. Section 1125). The bank's plan was filed after 120 days after the date of the order for relief, and the court having denied at hearing the debtor's motion to extend its period of exclusivity under Section 1121 of the Code, (11 U.S.C. Section 1121), both plans are timely and to be considered each on its merits.

The debtor's plan as originally filed made no provision for the payment of interest on the claims of general unsecured creditors, interest to which they would be entitled in the event of liquidation under Chapter 7 of the Code in view of the debtor's apparent solvent condition, and debtor made no change in its charter prohibiting the issuance of nonvoting securities. To obviate the objections that the plan did not accord with the requirements for confirmation prescribed by Section 1129 of the Bankruptcy Code, (11 U.S.C. Section 1129), in that the class of unsecured creditors had not affirmatively accepted the plan and that without interest the plan failed to meet the requirements of subsection (a)(7) requiring payments to such class of an amount no less than would be received in liquidation, and, as to the failure to propose the mentioned charter provision, that it accordingly failed to contain one of the provisions required by Section 1123(a)(6) of the Bankruptcy Code, (11 U.S.C. Section 1123(a)(6)), as there required, debtor moved at hearing for leave to amend its plan to cure those deficiencies and on August 23, 1982 filed its "amended plan of reorganization" providing for inclusion in its charter of an appropriate provision with respect to issuance of equity securities. The court will in this order grant the motion made at hearing and accordingly the debtor's plan to be considered here is its "amended plan of reorganization".

### PERTINENT FINDINGS OF FACT

1.

The debtor which was formerly known as Brookview Country Club was incorporated in 1947 as a private member-only country club since 1969 located in Hamel, Minnesota. It affords to all its members and their guests the facilities of its clubhouse and appurtenances and to its playing members and their guests the use of its golf course.

**2.**

The club's facility is encumbered by first and second real estate mortgages securing loans obtained from the First National Bank of Minneapolis. The club has had a long and troubled history of management of that debt. The original principal amount of the debt secured by the first mortgage was $800,000.00 and the second mortgage secures a debt in the original principal amount of $130,000.00.

**3.**

The mortgages were made at then prevalent interest rates far less than those now prevailing. The debtor nevertheless over the course of the years had substantial difficulty in maintaining its payments of principal and interest.

(a) The debtor in May 1971 requested First National Bank of Minneapolis (hereafter First Bank) to grant a two year moratorium on principal payments on both mortgages, and that request was granted.

(b) The debtor again in December 1971 requested that First Bank grant an additional 13 month moratorium on the payments of principal and interest as to both mortgages which request was granted.

(c) The debtor again in April 1975 requested that First Bank grant a moratorium on principal payments and in response the bank granted such a moratorium on principal payments for a period of six months as to both the first and second mortgages.

(d) In November 1976 and through February 1977, the debtor was unable to make its installment payment on either mortgage.

(e) The debtor again in February 1977 requested that principal payment for the period November 1976 through May 1977 be extended to the maturity dates of the first and second mortgages and that request was granted by First Bank.

(f) The second mortgage became due July 1, 1980 having a then principal balance of $65,116.32. The debtor failed to make the payment and requested an extension to July 1, 1984 to be payable in monthly installments of $1,812.24, and that extension was granted by First Bank.

(g) The debtor failed to make its monthly payments on the first and second mortgages beginning again on June 1, 1981 and has made no payments since.

**4.**

The principal balance due and owing on the first mortgage at the date of hearing is $605,412.15 and the principal balance owing on the second mortgage is $53,200.64. Interest accrues on the mortgages respectively at the rate of $126.13 per diem and $22.17 per diem.

**5.**

The present fair market value of the debtor's club premises including the golf course and subject to the mortgages to First Bank is in a range between $1,440,000.00 and $2,000,000.00. The value of the premises is in excess of the total present mortgage debt and the liquidation value of the premises and all other assets of the debtor is in excess of its total listed indebtedness, both secured and unsecured.

**6.**

First Bank commenced a foreclosure proceeding by advertisement, and a Sheriff's sale was scheduled to be held on January 13, 1982 with respect to the real estate premises subject to its mortgages. On the day prior to the scheduled sale, the debtor on January 12, 1982 filed its voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code in this court and obtained the benefits of the automatic stay provided by Section 362 of the Bankruptcy Code, (11 U.S.C. Section 362).

**7.**

If First Bank had been permitted to continue its foreclosure proceeding, it would have, on the expiration of the period of redemption, January 13, 1983, a sum having by reason of increased and now prevailing interest rates representing a more valuable investment than the investment presently secured under its mortgages at a lesser rate if the debtor's plan is confirmed, defaults in

payments on the mortgages are cured, the expenses of sale and cost of deferment paid and due dates reinstated. The difference in investment value to the bank is $164,651.64 using a discount rate based on opportunity cost of 17.68% with respect to the first mortgage and 17.8% with respect to the second mortgage.

## DISCUSSION

### OBJECTIONS TO DEBTOR'S PLAN

The objections made by the committee of unsecured creditors to the debtor's plan having been resolved and the objections withdrawn in view of the amendments offered by the debtor at hearing which are now permitted by the court, only the objections made by First National Bank of Minneapolis to the debtor's plan are at issue.

The bank's principal contention is that the bank as a claimant separately classified is impaired in that it will not receive payment of the $164,651.64 which it would expect to be able to receive if permitted in effect to re-accelerate its mortgage investment, that it has not accepted the debtor's plan and, the value of its security exceeding its claimed debt, such acceptance is required and, accordingly, the requirements for confirmation found in Section 1129(a)(7), (8) and (10) have not been met. The court is only concerned as to the status of the First Bank within the intendment of those sections since the amended plan makes adequate provision for the unsecured claims within Class 6 and as to claimants in Class 7 holding deferred obligations payable November 1, 2001, no claimant has objected, the effective date of the plan with respect to such claims might arguably be said to be November 1, 2001 and the court is not satisfied that the value of such individual claims at present date is not so substantially reduced from their apparent face amount that they are demonstrably payable at face amount in liquidation.

The bank contends it is impaired because it would be in a better position if permitted to proceed to foreclosure and thus obtain the accelerated fruits of its mortgage, and

that the impairment has not been removed by the debtor through compliance in its plan with Section 1124 of the Bankruptcy Code, (11 U.S.C. Section 1124) which provides in relevant part as follows:

**"Section 1124.  Impairment of claims or interests.**

Except as provided in section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan—

"(1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest;

"(2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—

"(A) cures any such default, other than a default of a kind specified in section 365(b)(2) of this title, that occurred before or after the commencement of the case under this title;

"(B) reinstates the maturity of such claim or interest as such maturity existed before such default;

"(C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and

"(D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest; or
* * * *"

■ If the failure of First Bank to realize the benefits of the acceleration and realization which would have occurred on the anticipated foreclosure of its mortgages constitutes "damages" within the meaning of Section 1124(2)(C) then First Bank as a claimant and as a separate class is impaired for the plan makes no provision for such payment to the bank as a claimant or as a class.

The word "damages" must be given a meaning consonant with the overall thrust and meaning of the section within which it is contained. The legislative history is not helpful in this regard. No conference was held to rationalize the adoptions of the original House and Senate proposals which resulted eventually in Section 1124. See the Historical and Revision Notes to that section as found in 1981 pamphlet edition, 11 U.S.C.A. Section 1124 (Historical and Revision Notes, pages 247 and 248). The underlying Senate file 2266 provided that a claim or interest is unimpaired on the offer of cure and reinstatement without more. H.R. file 8200 provides that "unless such holder has reasonably relied, to the detriment of such holder, on such contractual provision or such applicable law"—cure and reinstatement are sufficient. The final legislative statements applicable to the law as enacted merely indicate a compromise of the two original proposals. The most that can be said for this history is that it demonstrates that something more than cure and reinstatement is required and it is in that context that meaning of the word "damages" must be found.

The purpose of the section is to permit the financially embarrassed debtor to retain the security and enjoy the benefits of the original security arrangements. In that the purpose is to protect against the rights lost simply by reason of acceleration. It would seem fruitless indeed if the debtor is required in order to enjoy the benefit of this section to pay the total expected present economic cost of retaining or restoring the maturities provided in the instrument. I conclude accordingly that the term damages does not encompass that result. The damages have a lesser measure intended to protect the security holder from the expenses to which he has been put by reason of the denial of his right of acceleration. That is the extent to which he can reasonably rely on the instrument or on local law and suffer detriment by reason of the effect of this section on such right of acceleration. The security holder simply cannot expect to be held totally harmless from the effects of the application of Section 1124, and any

such reliance on the security instrument or local law is not "reasonable" in the context of the title and in the context of the section. The security holder may only reasonably rely on the right of acceleration or foreclosure based on the instrument and local law to the extent of compensation for any expenses he may have incurred, in this case attorneys' fees incident to the foreclosure and reimbursement for the out-of-pocket loss occasioned by the fact that the payments in default have been deferred. That loss is adequately compensated by an appropriate interest allowance. The economic loss of expectation mentioned in the foregoing findings has a speculative basis assuming no decline in the cost of funds overtime, and is not "damage" of the type contemplated by this section and need not be compensated.

The plan as amended provides for the payment of such damages "as may be allowed pursuant to 11 U.S.C. Section 1124(2)(C)". I deem that to be a sufficient provision under Section 1124 as reflected in the succeeding findings.

Since the bank is not impaired, there is no necessity for its affirmative acceptance.

The claim of its impairment was the principal basis for the First Bank's additional contention that confirmation must be denied since no class of claims has accepted the plan which is said to be a deviation from the requirements of Section 1129(a). Section 1129 is an amalgam of subparts originating either in the Senate of in the House of Representatives. The result is a certain inconsistency not helpfully resolved by resort to the legislative history, (11 U.S.C. Section 1129(a)(10)).

11 U.S.C. Section 1126(f) provides that an unimpaired class is "deemed to have accepted the plan" and accordingly solicitation of acceptances with respect to such class is not required. The present problem as posed originally by the parties is whether a "deemed" acceptance by a class is the equivalent of the "acceptance" prescribed in Section 1129(a)(10). See *In Re Barrington Oaks General Partnership,* 15 B.R. 952

(Bkrtcy.D.Utah, 1981). I do not however think it necessary to reconcile the two provisions in that context. Subsection (10) seems to be pointed simply to prevent an improper insider effect and to prevent as had occurred under Chapter XII of the former Bankruptcy Act a situation where all impaired classes could be subjected to "cram down" based on existing values thus depriving impaired classes of appropriate expectations. See In Re Pine Gate Associates, 2 B.C.D. 1478 (N.D.Ga.1976). I believe the section has only that effect and was so intended, the intention being reflected and hopefully to be perfected on adoption of the technical amendments to the Bankruptcy Reform Act of 1978. There Section 1129(a)(10) is rewritten and clarified to read "if a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan must accept the plan, determined without including any acceptance of the plan by an insider". Whereas here no class of claims is impaired and accordingly no solicitation of claims is required, it would be a useless gesture to require a disclosure statement and solicitation of claims from creditors who are in reality being paid in full.

█ First Bank further contends the debtor's plan is not confirmable because of an insufficient showing of the financial ability of Mr. Hendry to carry out his conditional commitment to advance funding for the plan, and that there has been an insufficient showing of the debtor's ability even with such funding to continue its operation over time so as to assure, as is required by Section 1129(a)(11), that confirmation of the debtor's plan is not likely to be followed by liquidation or a need for further financial reorganization. As to the financial worth of Mr. Hendry, the court observes that no issue was made in any formal objection questioning his financial worth. The court assumes that the word "confirmation" in the mentioned subsection contemplates as well an execution or consummation of the plan, the real intendment of the subsection being to avoid confirmation of plans which even if consummated are fruitless as an instrument to reorganization. In the present situation, there being no showing of his inability, it would be appropriate to confirm the plan and if there is an immediate failure of funding, appropriate remedies are available under the Bankruptcy Code.

While the proof offered to show a continued viability of operation after confirmation is not conclusive, it does demonstrate a reasonable probability that such will occur. While the immediate plan certainly considers an enhancement of membership, it obviously does not foreclose other adjustments by way of economies or of increased charges for the use of the club's facilities. The court is not prepared to say that the debtor has not shown accordingly the probability of a continued operation sufficient to fund the extended plan payments on the mortgage and to deal with other exigencies. The failure of the debtor to meet the requirements of its mortgage in prior years by maintaining a sufficient membership base or establishing adequate fees does not compel, in my view, any contrary conclusion.

## OBJECTIONS TO THE FIRST BANK PLAN

The objections of the debtor and of the creditors' committee are directed at the planned definition of "effective date" and the option afforded by the plan to the trustee to forego liquidation of such assets as he might elect to abandon in satisfaction of the claim of the security holder. This combination according to the objectors renders the plan illusory in that the trustee might choose to abandon even those premises subject to the bank's mortgage with the result that the "effective date" would never be reached by reason of a failure to accumulate sufficient funds to make the payments otherwise contemplated by the plan.

These provisions cannot be read in a vacuum. A trustee if designated under the Bankruptcy Code has certain clearly defined obligations and responsibilities. It would be the obligation of the trustee to proceed with due diligence to liquidate the properties. The option afforded by the plan

would not relieve from those fiduciaries responsibilities. Accordingly surrender or abandonment of assets would only be appropriate where no significant net return to the fund would result. The term "effective date" must be given a reasonable reading and mean within a "reasonable" time. The one element which might defeat payment of all classes other than the bank on an unimpaired basis would be a simple failure of equity. None of the evidence presented to the court indicates such a possibility. The bank's own claim, and its class, strangely is impaired in fact but not in law for the plan deprives the bank of the right of acceleration, an alteration of its legal and contractual rights, but since the planned cure complies with Section 1124(2)(A)–(D) by definition the deprivation does not constitute impairment. No other class of claims is impaired since the plan provides for payment in full with interest, the amount to which the holders would be entitled on a liquidation of this solvent estate.

The bank's acceptance as a separate class also conforms to the requirements of Section 1129(a)(10) even if facially construed.

The bank's plan is also confirmable.

### SELECTION OF A PLAN

As previously indicated, the creditors' committee while adhering to its objections to the First Bank plan has withdrawn and does not object to the debtor's plan. In this situation, the court is bound to consider those expressed preferences of the creditors in its determination as to which plan to confirm such consideration being mandated by Section 1129(c). While the court is of course free to make its own determination having taken into account such preference there is nothing in the present situation which the court feels is compelling to the contrary. Accordingly the First Bank plan while confirmable should not be confirmed and the plan of the debtor being not only confirmable but meeting the preference of creditors should be confirmed. The following additional findings are intended to that end.

### ADDITIONAL FINDINGS OF FACT

1.

First Bank proposed its plan of reorganization in good faith.

2.

First Bank has disclosed all payments made or promised to be made for costs and expenses in, or in connection with, this case.

3.

Under First Bank's plan, each class of creditors will receive as of the effective date of said plan no less than the amount each class of creditors would have received if the debtor were liquidated under Chapter 7.

4.

No class of creditors, except First Bank, is impaired under First Bank's plan.

5.

A class of creditors has accepted First Bank's plan.

6.

Holders of priority claims specified in Section 507(a) would be paid in cash and in full under First Bank's plan.

. . . . .

7.

The debtor's amended plan has been proposed in good faith and not by any means forbidden by law.

8.

The proponent of the amended plan has complied with the applicable provisions of Chapter 11 of the Bankruptcy Code.

9.

The amended plan complies with the applicable provisions of Chapter 11 of the Bankruptcy Code.

10.

All payments made or promised by the debtor or by a person issuing securities or acquiring property under the amended plan or by any other person for services or for costs and expense, or in connection with the amended plan and incident to the case, have been fully disclosed to the court and are

reasonable, or if to be fixed after confirmation of the amended plan, will be subject to the approval of the court.

11.

The identity and affiliations of any individual proposed to serve after confirmation of the amended plan as a director, officer or voting trustee, if any, of the debtor and of any affiliate of the debtor participating in the amended plan with the debtor have been fully disclosed and the appointment of such individuals to such offices or their continuance therein is equitable and consistent with the interest of creditors and with public policy.

12.

The identity of any insider that will be employed or retained by the debtor and such insider's compensation have been fully disclosed.

13.

The requirements of Section 1129(a)(6) of the Bankruptcy Code do not apply to this case.

14.

Each class is unimpaired under the amended plan.

15.

Each class is deemed to have accepted the amended plan and solicitations of acceptances with respect to each class from the holders of claims or interests are not required.

16.

With respect to each class, each holder of a claim or interest of such class has accepted the amended plan or will receive or retain under the amended plan on account of such claim or interest property of a value as of the effective date of the amended plan that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date.

17.

At least one class of claims is deemed to have accepted the amended plan, determined without including any acceptance of the amended plan by any insider holding a claim of such class.

18.

Debtor's amended plan does not impair any class of claims and Section 1129(a)(10) of the Bankruptcy Code is complied with.

19.

The amended plan provides for the payment of priority claims as set forth in Section 1129(a)(9) of the Bankruptcy Code.

20.

Confirmation of the amended plan is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor or any successor to the debtor under the amended plan.

21.

The unsecured creditors of the debtor are entitled to interest at the rate of 6% per annum on the amount of their claim from the date of the filing of the petition to the effective date of the amended plan.

22.

The First National Bank of Minneapolis is entitled to payment of its attorneys' fees and expenses incurred in and about the foreclosure proceeding together with interest at the rate of 17.5% per annum on the amount of mortgage payments due pursuant to the mortgages between the debtor and The First National Bank of Minneapolis dated March 12, 1969 and June 25, 1970 ("Mortgages") from the time that such payments were due to the effective date of the amended plan as damages pursuant to Section 1124(2)(C) of the Bankruptcy Code.

.    .    .    .    .

## CONCLUSIONS OF LAW

1.

The foregoing "pertinent" findings and "additional" findings to the extent they indicate applicability or nonapplicability of specific provisions of the Bankruptcy Code together with the foregoing discussions are herewith also adopted as conclusions of law.

2.

The debtor's amended plan of reorganization complies with the requirements of Section 1129 of the Bankruptcy Code, (11

U.S.C. Section 1129), and has accordingly met all requirements for confirmation and on the foregoing findings should be confirmed.

3.

The First Bank plan of reorganization complies with Section 1129 of the Bankruptcy Code, (11 U.S.C. Section 1129), except that by reason of the indicated preference of creditors and the court's finding and conclusion with respect to such pursuant to 11 U.S.C. Section 1129(c), (d) the court may not confirm the same.

ACCORDINGLY, IT IS ORDERED that the debtor's motion to substitute its amended plan of reorganization is granted, and it is further—

ORDERED that judgment enter:

1.

That the amended plan of reorganization filed by Rolling Green Country Club, a Minnesota corporation, debtor herein, is confirmed.

2.

That pursuant to the said plan of reorganization upon cure of the default in the mortgages between debtor and The First National Bank of Minneapolis, and upon payment to the said First National Bank of Minneapolis of its attorneys' fees and expenses incurred in and about the foreclosure proceeding together with interest at the rate of 17.5% per annum on the amount of mortgage payments due pursuant to the mortgages between the debtor and The First National Bank of Minneapolis dated March 12, 1969 and June 25, 1970 from the time that such payments were due to the effective date of the amended plan of reorganization as damages pursuant to Section 1124(2)(C) of the Bankruptcy Code that said mortgages are reinstated according to their terms and conditions as they existed prior to default by the debtor.

3.

The Restated Articles of Incorporation of the debtor shall be, and the same hereby are, amended by deleting Article VIII and inserting in lieu thereof new Article VIII as follows:

"ARTICLE VIII

This corporation shall have no capital stock. This corporation shall not issue non-voting equity securities."

The Amendment shall become effective when a Certificate of Amendment setting forth the Amendment and the manner of adoption thereof shall be filed for record with the Secretary of the State of Minnesota.

4.

This court shall retain jurisdiction of the debtor subsequent to entry hereof for the purpose of entering other and further orders relating to the consummation of the plan of reorganization, for the purpose of allowing claims and hearing objections if any thereto, for conducting and completing adversary proceedings heretofore filed for the purpose of determining or resolving any defaults, disputes or similar matters under the amended plan of reorganization. In all other respects, the court on the date of this order relinquishes jurisdiction over the debtor and its operations.