**In re SOUTHEAST COMPANY, Debtor.**

**BAP Nos. CC 86–1258 VJMo, CC 86–1270.**

**Bankruptcy No. LA 80–07010–JD.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued and Submitted March 18, 1987.

Decided Dec. 15, 1987.

Michael H. Goldstein, Stutman, Treister & Glatt, Los Angeles, Cal., for appellant.

Gary S. Klausner, Robinson, Wolas & Diamant, Los Angeles, Cal., for appellee.

Before VOLINN, JONES and MOOREMAN, Bankruptcy Judges.

## OPINION

PER CURIAM.

## FACTS

The appellee, Southeast Company, the debtor herein, is a California limited partnership. Its sole asset is an apartment complex in Jacksonville, Florida. The appellant, Florida Partners Corporation, is the successor-in-interest to I.R.E. Florida Income Partners, Ltd.[1] I.R.E. was the holder of a promissory note in the amount of $561,000, secured by a second mortgage on the property. The promissory note was executed on December 29, 1977. The note, which matures in 1992, provides for an interest rate of 6 percent, but 2 percent thereof is payable at maturity. 4 percent is payable monthly until then. The first monthly payment of $1,800 was due on February 1, 1979. The first and second payments were not timely made, although allegedly tendered "shortly thereafter." I.R.E. refused to accept the late and subsequent payments and began foreclosure proceedings. Trial was set to begin in Florida state court on July 31, 1980.

Thomas Townsend, the debtor's predecessor-in-interest and current general partner, conveyed the property to Southeast on July 11, 1980. Ten days later, on July 21, Southeast filed a Chapter 11 petition, thereby suspending foreclosure proceedings.

I.R.E. twice sought relief, unsuccessfully, from the automatic stay. On the second occasion, March 23, 1983, the bankruptcy court ordered the debtor to pay I.R.E. monthly adequate protection payments of $5,821. This figure was derived by calculating 9 percent annual interest on the entire principal balance owed under the promissory note. Under the terms of the promissory note, default triggered a penalty in-

1. Appellant's briefs refer to appellant as I.R.E.

terest rate of nine (9) percent.[2] As of January 3, 1986, Southeast had made adequate protection payments to I.R.E. of $170,574.23.

The debtor filed an original plan of reorganization on September 13, 1983. On January 30, 1984, the bankruptcy court determined that a third amended plan complied with the requirements of Code section 1129(a) (non-cramdown plan). The confirmation hearing was continued, however, pending resolution of I.R.E.'s objections to the plan. I.R.E. disputed the amount allowed for its claim and the nature of the cure that the debtor proposed to make on its delinquency under the promissory note.

I.R.E. asserted that its interest was "impaired," within the meaning of Bankruptcy Code section 1124, unless the debtor paid all overdue installments, as well as the 9 percent per annum penalty rate on the entire principal balance for the period of time between default and cure. Appellant maintained that absent such cure, state court remedies remained open to it after completion of bankruptcy proceedings. Debtor countered that payments in arrears might be properly paid off at a higher interest rate, but that a higher interest rate did not apply to the entire principal balance.

After two years of unsuccessful negotiations, the debtor sought to have the bankruptcy court determine the requirements for cure. The debtor brought a motion for summary judgment, contending that the sole issue to be determined by the bankruptcy court was one of law, that is, the application of Bankruptcy Code section 1124(2) to the requirements for cure and reinstatement prescribed by the note.

The bankruptcy court granted the debtor's motion for summary judgment and confirmed the third amended plan. The court held that cure and compensation for damages under section 1124(2) required a series of specific calculations and payments:

A. *On the effective date of the plan:*

(1) the payment of all missed monthly installments;

(2) a market interest rate of 12 percent due only on missed installments;

(3) payment of the appellant's reasonable pre-petition attorneys' fees, in the amount of $11,000;

(4) the adequate protection payments made between 1984 and 1986 were to be subtracted from all sums payable under (1), (2) and (3) above.

B. *Over the life of the plan:*

(5) appellant's reasonable post-petition attorneys' fees in the amount of $65,000 to be added to the principal and paid off over time;

(6) in all other respects, return to the pre-default terms of the promissory note.

I.R.E. has appealed from the confirmation order and from the order granting summary judgment. Debtor's cross-appeal was dismissed for untimeliness. For the reasons set forth below, we affirm both orders presently on appeal.

## QUESTIONS PRESENTED

1. What are the requirements for "cure" of a promissory note under section 1124(2)(A) of the Bankruptcy Code?
2. What kind of reliance damages are appropriate under section 1124(2)(C) of the Code?
3. Must post-petition attorneys' fees incurred in a claims dispute be paid by the debtor on the effective date of the plan or may they be paid over the life of the plan?
4. Were the bankruptcy court's findings of good faith and feasibility clearly erroneous?

2. "While any default exists in the making of any payments or in the making of any of the payments or in the performance or observance of any of the covenants, agreements or conditions of this Note, or of any instrument now or hereafter evidencing or securing the indebtedness evidenced hereby, or after maturity, the undersigned promises to pay on the first day of each month additional interest on the principal balance of this Note then outstanding at the rate representing the difference between the rate then applicable, as aforesaid, and nine (9%) percent per annum." Promissory Note & Security Agreement of December 29, 1977.

STANDARD OF REVIEW

The issues before us call for statutory interpretation, *i.e.* what is meant by "cure" and "damages" in Bankruptcy Code section 1124(2)? Statutory interpretation is a question of law and therefore reviewed de novo. *Anderson v. City of Bessemer,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

DISCUSSION

"The function of section 1124 is to set forth the conditions under which a class of claims or interests will be deemed unimpaired." *In re Arlington Village Partners, Ltd.,* 66 B.R. 308, 314 (Bankr.S.D. Ohio 1986). This section of the Bankruptcy Code has become the focus of dispute between secured lenders and reorganizing debtors. If a debtor is able to comply with section 1124 and thereby effect cure of a promissory note in default, the secured lender will not be entitled to vote on the plan of reorganization. Since cure is effected, the lender loses impaired status. *In re Forest Hills Associates,* 40 B.R. 410, 413 (Bankr.S.D.N.Y.1984); *In re Barrington–Oaks General Partnership,* 15 B.R. 952 (Bankr.D.Utah 1981). The secured lender prior to losing impaired status would logically attempt to negotiate to the maximum advantage, requirements for cure. *In re Arlington Village Partners, Ltd.,* 66 B.R. 308 (Bankr.S.D.Ohio W.D. 1986).

A. *Cure*

Appellant thus would give great breadth to the term "cure," as it applies to defaulted promissory notes. 11 U.S.C. § 1124(2)(A).[3] In appellant's view, not only must the debtor make up payments that have been missed since the time of default, but there must also be paid the penalty rate of interest on the entire principal balance for the time between default and cure. Moreover, the penalty interest rate must be set at the rate brought on by default under the terms of the promissory note. At this point it should be observed that the express terms of the note (footnote 2) provide for payment of penalty interest "while any default exists...."

In support of its broad definition of cure, appellant strictly construes section 1124(2)(D) to mean that cure should include payment of the penalty interest rate, because "section 1124(2)(D) requires that I.R.E.'s rights not be altered." Brief of Appellant at 16. Furthermore, "[c]ourts have uniformly held that if a proposed cure under 11 U.S.C. § 1124(2) alters any right of a creditor within a class, other than the right to accelerate, the class is impaired." Brief of Appellant at 11. Thus, for a cure to be effective, it must be fully "in accordance with the terms of the Note and Florida law." Brief of Appellant at 16.

In support of its position, appellant cites *In re Manville Forest Products Corp.,* 43 B.R. 293 (Bankr.S.D.N.Y.1984). However, in its relevant aspect this case holds to the contrary:

> this Court concludes that the long-term lenders are *not entitled to receive interest on the accelerated portion of the debt* despite the fact that the debt was indeed accelerated by virtue of the filing of the bankruptcy petition. *The long-term lenders are merely entitled to interest on the overdue installments of principal.* Nevertheless, the long-term

3. ... a class of claims or interests is impaired under a plan unless ... the plan—

(2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—

(A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title;

(B) reinstates the maturity of such claim or interest as such maturity existed before such default;

(C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and

(D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest; ...

11 U.S.C. § 1124(2).

lenders are unimpaired because they are returned to the same position they were in immediately prior to the acceleration, and are thereby given the full benefit of their original bargain, including the right to collect interest under the original terms of the contracts and the right to reaccelerate the debts if MFPC [the debtor] again defaults under the terms of the agreements. (Emphasis added.)

43 B.R. at 299, *aff'd in part, rev'd in part,* 60 B.R. 403, 404 (S.D.N.Y.1986).

In *In re Elijah,* 41 B.R. 348, 350 (Bankr. W.D.Mo.1984), also cited as authority for appellant's strict construction of 1124(2)(D), the debtor was not permitted to surrender part of the collateral in order to cure, where the contract called for full surrender of the collateral or payment of the agreed upon terms. In *In re Barrington–Oaks, supra,* 15 B.R. at 955, 967, the court held that assumption of a nonrecourse obligation by a third party impermissibly altered the creditor's rights. In both cases, the debtors sought to effect a cure by a redistribution of property or obligations that would place the creditor in a different position than it held prior to default. In the case here, the appellant will be returned to its pre-default position.

■ Thus, neither appellant's arguments nor its authorities are persuasive. Section 1124(2)(D) does not totally forbid alteration of I.R.E.'s contractual or state law rights. Rather, it specifies that legal, equitable or contractual rights must not be *"otherwise* alter[ed]." The exceptions referred to by this "otherwise" are spelled out in subsections (A), (B) and (C) of 1124(2). According to these subsections, cure, reinstatement and reasonable reliance can alter the terms of a contract in Chapter 11 proceedings. *In re Taddeo,* 685 F.2d 24, 28–29 (2d Cir. 1982); *In re Madison Hotel Associates,* 749 F.2d 410, 419 (7th Cir.1984); *In re Forest Hills Associates,* 40 B.R. at 415; *In re Masnorth,* 28 B.R. 892, 894 (Bankr.N.D. Ga.1983).

Appellant contends that "[t]he consequences flowing from a default, in addition to the event of default, must be cured," citing *In re Forest Hills Associates, supra; In re Manville Forest Products Corp., supra; In re Kizzac Management,* 44 B.R. 496 (Bankr.S.D.N.Y.1984). This general statement does not mean that the debtor must pay the post-default interest rate on the accelerated debt. In *In re Forest Hills, supra,* the court stated:

> It is thus clear that Code section 1124(2) provides the debtor in distress with the statutory tools necessary to effect a total healing of the scars of contractual default, by placing the parties into the same position they were in immediately before the default occurred. This healing is accomplished by paying the creditor whatever monies he would have received under the contract, had the debtor not defaulted. Therefore, just as the debtor need not pay the post-default accelerated debt, *he need not pay the post-default interest rate on the accelerated debt.* The creditor is nevertheless, rightfully categorized as unimpaired, for he is returned to the same position he was in immediately prior to the default, and is thereby given the full benefit of the original bargain.

*In re Forest Hills,* 40 B.R. at 415 (emphasis added).

B. *Compensation for damages*

Alternatively to its argument that *cure* requires payment of penalty interest on the entire principal balance during default, pursuant to subsection 1124(2)(A), appellant proposes that under subsection 1124(2)(C), the contractual penalty interest rate is the proper compensation for *damages* caused by the debtor's default. (Appellant's Brief at 21–23.) Without using the term "liquidated damages," appellant interprets the contractual default rate of interest as a kind of liquidated damages clause. *Cf. In re Forest Hills,* 40 B.R. at 413 (default rate of interest specifically named liquidated damages).

■ Subsection 1124(2)(C) calls for compensation to the creditor of reasonable reliance damages. Appellant suggests that a creditor qualifies for compensation of the contractually set penalties attendant to default, by virtue of this reliance damages

provision. There is no authority for this argument cited in the appellant's briefs. To the contrary, *see In re Arlington Village Partners, Ltd.*, 66 B.R. at 319 (denying default rate of interest as a form of damages); *accord In re Manville Forest Products Corp.*, 43 B.R. at 301; *In re Rolling Green Country Club*, 26 B.R. 729, 733 (Bankr.Minn.1982).

The bankruptcy court generously found that the debtor should pay a market rate of 12 percent on all past due payments. The influence of *In re American Mariner Indus. Inc.*, 734 F.2d 426 (9th Cir.1984) and the concept of lost opportunity costs is apparent in this ruling, although, unlike in *American Mariner*, in the case here there was no determination that the creditor was undersecured. Other courts have refused to grant such lost opportunity costs for secured promissory notes in default. *E.g., In re Timbers of Inwood Forest Associates, Ltd.*, 802 F.2d 777 (5th Cir.1986), *cert. granted*, — U.S. —, 107 S.Ct. 2459, 95 L.Ed.2d 868 (1987); *In re Kizzac Management*, 44 B.R. at 502–03, *In re Penny*, 52 B.R. 816, 821 (Bankr.E.D.N.C.1985); *In re Hewitt*, 16 B.R. 973, 980 (Bankr.D.Alaska 1982); *In re South Village, Inc.*, 25 B.R. 987, 1002 (Bankr.D.Utah 1982) (Mabey, J.).

We hold that reliance damage under Code section 1124(2)(C) does not comprise contractual penalty interest rates. At most, such damages include, as conceded by appellee here, additional interest charges on past-due installments of interest and principal.[4] 11 U.S.C. § 506(b); *contra Manville Forest Products*, 43 B.R. at 300, *aff'd in part, rev'd in part*, 60 B.R. at 404–05 (reversing J. Lifland and permitting interest on past-due interest payments).

C. *Attorney's fees as compensable damages*

(i.) Pre-petition fees

The text of section 1124(2)(C) speaks of damages incurred "in reasonable reliance" on contractual provisions. The standard interpretation of this section is illustrated by *In re Masnorth*, 36 B.R. 335 (Bankr.N.D.Ga.1984). There, the court found that attorneys' fees were to be recompensed by the debtor, if the note's acceleration provision came into play and the lender incurred expenses in bringing a foreclosure proceeding. *See also In re Orlando Tennis World Development Co., Inc.*, 9 C.B.C.2d 816, 819, 34 B.R. 558 (Bankr.M.D.Fla.1983); *In re Rolling Green Country Club*, 26 B.R. at 733.

The court below agreed with the reasoning of previous decisions, such as *Masnorth, Orlando Tennis* and *Rolling Green*, and imposed on the debtor reasonable attorneys' fees for pre-petition foreclosure proceedings. The court required the debtor to repay appellant $11,000 in fees by the effective date of the plan. The debtor has never contested this as part of the bankruptcy court's ruling on attorney's fees.

ii. Post-petition fees

■ In the proceedings below, the creditor claimed it was entitled to post-petition attorney's fees, both for seeking relief from stay and for opposing confirmation of the Chapter 11 plan. While the debtor was not prepared to concede that the creditor was entitled to post-petition attorney's fees, the debtor offered to compromise and pay $65,000 in fees over the life of the plan. The court approved the debtor's proposed compromise.

In the interest of not reneging on the terms of the compromise it had proposed, the debtor has not contested on appeal the creditor's right to post-petition fees. The creditor, nevertheless, takes the position that not only are post-petition fees part of its reliance damages, but that these fees must be paid by the debtor before the effective date of the plan.

Courts have shown considerable reluctance to award attorney's fees for such post-petition litigation, where the secured creditor's interest is not threatened. *In re Masnorth*, 36 B.R. 335 at 339 (Bankr.N.D.Ga.1984) (post-petition litigation primarily motivated by desire for increase in interest

4. In the case here, all past-due installments were for interest only.

rate, where $100,000 equity cushion protected secured creditor's interest—court reduced attorney's fees requested by more than half); *contra In re Carey,* 8 B.R. 1000 (Bankr.S.D.Cal.1981) (attorney's fees awarded to oversecured creditor for bringing relief from stay proceedings); *In re Dominguez,* 51 B.R. 171 (Bankr.C.D.Cal. 1985) (following *Carey* ).

By the decision below, the creditor will suffer no change in the status of its claim. The lengthy dispute between the parties was not necessary for the creditor to protect his investment. The value of the property was apparently sufficient to protect the appellant's interest. The court below was well within its discretion in imposing a long-term schedule of payment for such substantial and possibly superfluous attorney's fees. *In re Nucorp Energy, Inc.,* 764 F.2d 655, 657 (9th Cir.1985).

### D. *Good faith & feasibility*

Appellant argues that the debtor's reorganization plan should not have been confirmed in any event, as it did not comply with the good faith and feasibility requirements of section 1129(a). The bankruptcy court found that the plan was feasible and proposed in good faith at the provisional confirmation hearing on January 30, 1984. Such findings are reviewed for clear error. *In re Madison Hotel Associates,* 749 F.2d 410, 425 (7th Cir.1984); *In re Acequia, Inc.,* 787 F.2d 1352, 1357 (9th Cir.1986).

The debtor made an offer of proof with respect to the plan's feasibility and the debtor's good faith at the January 30, 1984 confirmation hearing. The appellant made no objections, and the debtor therefore presented no evidence. As a result, the record has sparse references to good faith and feasibility. Nothing, however, suggests that the court's findings were clearly erroneous.

\* \* \* \* \* \*

For the reasons stated above, we hereby affirm the orders of the court below, confirming the third amended plan of reorganization and granting summary judgment in favor of the debtor's objection to proof of claim.