In re SOUTHEAST COMPANY, Debtor.

**FLORIDA PARTNERS CORPORATION,** Successor-in-Interest to I.R.E. Florida Income Partners, Ltd., Appellant,

v.

SOUTHEAST COMPANY, Appellee.

No. 88–5606.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 1988.

Decided Feb. 21, 1989.

**336**

Michael H. Goldstein, Stutman, Treister & Glatt, Los Angeles, Cal., for appellant.

Gary E. Klausner, Robinson, Diamant, Brill & Klausner, Los Angeles, Cal., for appellee.

Before BROWNING, SCHROEDER and NOONAN, Circuit Judges.

SCHROEDER, Circuit Judge:

This is a bankruptcy appeal asking us to review an order approving a plan of reorganization. The Bankruptcy Appellate Panel affirmed. *In re Southeast Co.*, 81 B.R. 587 (9th Cir. BAP 1987).

In 1977, the debtor's predecessor in interest and the appellant creditor's predecessor in interest entered into a mortgage that called for, in the event of default, an increased interest rate as well as an option to the creditor to accelerate the note's maturity. There was a default and acceleration two years later, and the debtor's Chapter 11 bankruptcy petition followed.

In this appeal, appellant Florida Partners Corporation contends that while the Bankruptcy Code provides a way for the debtor to "cure" the maturity acceleration and restore the original payment term without impairing appellant's security, 11 U.S.C. § 1124(2) (1982 & Supp. IV 1986), appellant nonetheless remains impaired unless it receives the higher post-default interest rate provided for in the mortgage note. We hold that the Bankruptcy Court did not err in denying the appellant post-default-rate interest, because the Bankruptcy Code authorizes approval of a reorganization plan that restores the relation of contracting parties to pre-default status, including the rate of interest to be charged. *See id.* We have expressly stated that this section of the Code "authorizes a plan to nullify all consequences of default, including avoidance of default penalties such as higher interest." *In re Entz–White Lumber and Supply, Inc.*, 850 F.2d 1338, 1342 (9th Cir. 1988).

Appellant also contends that its claims for interest are of a type specifically called for by the Bankruptcy Code under 11 U.S. C. §§ 502(b) & 506(b) (Supp. IV 1986), and that the Bankruptcy Court's award of attorneys' fees was improper. We find these arguments to be without merit. Accordingly, this court affirms the judgment of the Bankruptcy Court and the Bankruptcy Appellate Panel.

## FACTS

In 1977, I.R.E. Florida Income Partners ("IRE"), predecessor in interest to Florida Partners Corporation ("FPC"), entered into a mortgage agreement on an apartment building with Joseph L. Schwartz, predecessor in interest to Southeast Company, and a promissory note was given. The property securing the note is worth more than the amount of indebtedness, making the mortgagee an oversecured creditor. Under the note's terms, the purchaser was to make monthly interest-only payments on the entire unpaid principal at the rate of six percent per year, paying four percent and deferring two percent until the note matured in January 1993, when the entire balance of principal and unpaid deferred interest would become due. The note provided that upon default the mortgagee had the option to accelerate maturity of the note, and that regardless of whether the mortgagee exercised that option, interest was to be paid after default at a rate of nine percent per year without any deferral. Payment of any interest that had accrued at the default rate was required by the note's terms as a condition precedent to curing default. The note also provided for the recovery of any costs, including attorneys' fees, involved in collecting the note.

In March 1979, IRE informed Schwartz that the note and mortgage were in default because the interest payments due in February and March of 1979 had not been paid, and that IRE was accelerating the maturity of the note. IRE also commenced judicial foreclosure against the property.

In July 1980, Southeast succeeded Schwartz in interest when title to the property securing the note was transferred to

Southeast. That same month, before the foreclosure action came to trial, Southeast commenced reorganization under Chapter 11 of the Bankruptcy Code. After Southeast had petitioned for bankruptcy, FPC succeeded in interest to IRE.

Southeast filed a reorganization plan in December 1983, which proposed to treat FPC's claim on the note as "unimpaired" because Southeast intended to cure all defaults and delinquencies owing to FPC and to have the original maturity of the note reinstated pursuant to 11 U.S.C. § 1124(2). The plan was confirmed in March 1986, over FPC's objection. As prerequisite to adoption of the plan, the Bankruptcy Court ordered Southeast to pay to FPC: (1) the balance of all missed payments plus interest at twelve percent accruing from date due, less the amount already paid as adequate protection payments; (2) $11,000 for pre-petition attorneys' fees; and (3) $65,000 for post-petition attorneys' fees, to be added to the principal of the note and paid over time. The approved plan provided for future interest payments at the pre-default six percent rate, rather than the post-default nine percent rate requested by FPC. FPC appealed confirmation of the plan to the Bankruptcy Appellate Panel ("BAP"), and the BAP affirmed the order. *Southeast*, 81 B.R. 587. FPC appeals to this court.

## ANALYSIS

The principal issue is the proper interpretation of 11 U.S.C. § 1124(2) relating to when a claim may be regarded as "unimpaired," and hence qualify for approval as part of a reorganization plan without re-

quiring acceptance by the creditor. *See* 11 U.S.C. § 1126(f) (Supp. IV 1986); 11 U.S.C. § 1129(a)(8) (1982 & Supp. IV 1986). Section 1124(2) provides that although a creditor may be contractually entitled to accelerate the payment of principal or interest after the debtor's default, the Bankruptcy Court may approve a plan including appropriate default cure, reinstatement of the original maturity of the claim as it existed before the default, and compensation for damages sustained by the holder of the claim.[1]

The particular loan contract at issue here provided not only for acceleration of the debt on default, but also for the interest rate to increase from six percent to nine percent after default. FPC challenges the holding of the Bankruptcy Court and the BAP that reinstatement of the original maturity date under section 1124(2)(B) also permits the debtor to continue to pay interest at the pre-default six percent rate rather than the post-default nine percent rate. FPC maintains that it bargained for a higher post-default interest rate, one independent of acceleration of the note's maturity. It argues that because Southeast's duty to pay the post-default interest rate is not a consequence of acceleration, that duty cannot be eliminated by a section 1124(2) cure.

We are guided by this court's recent decision in *In re Entz–White Lumber and Supply, Inc.*, 850 F.2d 1338 (9th Cir.1988), which dealt with a situation similar to the one before us. There, a creditor attempted to enforce the terms of its promissory note which called for a higher interest rate on all sums not paid when due. The debtor failed to pay the note when it matured, and

1. The section provides in pertinent part:
   § 1124. Impairment of claims or interests.
   ... [A] class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan—

   . . . . .

   (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—
   (A) cures any such default that occurred before or after the commencement of the case under this title ...;

   (B) reinstates the maturity of such claim or interest as such maturity existed before such default;
   (C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and
   (D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest....

the creditor sought the higher interest rate for the period of time after maturity that the note had remained unpaid. *Id.* at 1339–40. The creditor argued that since no acceleration of the note's maturity had occurred, section 1124(2) did not apply. This court rejected such a narrow construction of the purposes of that section:

> The Bankruptcy Code broadly states that a Chapter 11 reorganization plan shall "provide adequate means for the plan's implementation, such as ... curing or waiving of any default." 11 U.S.C. § 1123(a)(5)(G). The Code does not define cure. In *In re Taddeo*, 685 F.2d 24, 26–27 (2d Cir.1982), the Second Circuit said, "A default is an event in the debtor-creditor relationship which triggers certain consequences.... Curing a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified. This is the concept of 'cure' used throughout the Bankruptcy Code."

*Id.* at 1340.

■ FPC's position in this case, like the position of the creditor in *Entz–White*, conflicts with this concept of "cure." FPC is incorrect in claiming that a cure of default under section 1124(2) cannot include the setting aside of a default interest rate imposed without an acceleration. The consequences of default for purposes of cure are not limited to acceleration. Section 1124(2) of the Bankruptcy Code "authorizes a plan to *nullify all consequences* of default, including avoidance of default penalties such as higher interest." *Id.* at 1342 (emphasis added). Plans to cure defaults under section 1124(2) are not limited to those defaults resulting in acceleration. *Id.* at 1341. Nor are such plans limited to nullifying only the acceleration component of a default. We are instructed by Congress' intent that a creditor be treated as unimpaired so long as the reorganization plan returned the creditor to its original position:

> The intervention of bankruptcy and the defaults represent a temporary crisis which the plan of reorganization is intended to clear away. The holder of a claim or interest who under the plan is restored to his original position, when others receive less or get nothing at all, is fortunate indeed and has no cause to complain.

S.Rep. No. 989, 95th Cong., 2d Sess. 120, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5906. FPC has here been restored to its original position. Accordingly, the BAP did not err in denying FPC's claim for interest at the post-default rate.

■ In the alternative, FPC contends that its right to have the default rate applied to accrued post-petition interest is an allowed oversecured claim under 11 U.S.C. § 506(b), and that its right to have the rate applied to accrued pre-petition interest is an allowed claim under 11 U.S.C. § 502(b). Section 506(b) allows an oversecured creditor "interest on [the] claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." However, section 506(b) does not provide a mechanism by which FPC can receive post-petition interest at the post-default rate provided for in the note. Our discussion in *Entz–White* of an identical argument, in which we cited with approval the BAP decision below in this case, makes this point and controls our decision:

> [The creditor] asserts that it is an oversecured creditor and as such it is entitled under section 506(b) to interest on its claim that should be determined by the terms of the contract, including the post-default interest rate.... To [allow payment at the post-default rate] would have completely eliminated the benefits of cure in this case.... The more natural reading of sections 506 and 1124 is that the interest awarded should be at the market rate or at the pre-default rate provided for in the contract. *See In re Southeast Co.*, 81 B.R. 587, 592 (BAP 9th Cir.1987) (holding that reliance damage under section 1124(2)(C) "does not comprise contractual penalty interest rates").

850 F.2d at 1342–43 (footnotes omitted). Accordingly, the BAP did not err in denying FPC's claim for post-petition interest at the post-default rate.

■ Section 502(b), like section 506(b), provides no mechanism for awarding FPC pre-petition interest at the post-default rate provided for in the note. Section 502 provides a general framework for the allowance of claims or interests. Section 502(b) is a means by which courts determine whether and to what extent claims are allowed once objections have been made.[2] FPC cites no case in which section 502(b) has been used as a basis for allowing pre-petition post-default interest where there has been a cure pursuant to section 1124(2). The cases FPC cites in support of its position are inapposite because they do not involve section 1124(2) cure of default. *See In re United Merchants & Mfrs., Inc.*, 674 F.2d 134 (2d Cir.1982) (liquidated damages provision triggered by bankruptcy filing held to be an allowable claim; no mention of section 502); *In re Black Ranches, Inc.*, 362 F.2d 8 (8th Cir.) (predates enactment of sections 502 and 1124), *cert. denied*, 385 U.S. 990, 87 S.Ct. 595, 17 L.Ed.2d 450 (1966); *In re Berry Estates, Inc.*, 34 B.R. 612 (Bankr.S.D.N.Y.1983) (determining proper post-maturity rate of interest where state usury ceiling had been removed); *In re Rutherford*, 28 B.R. 899 (Bankr.N.D.Ill. 1983) (determining amount of security in a note; no mention of section 502).

The rationale of our decision in *Entz–White*, although dealing expressly with section 506(b), also applies to section 502(b). To allow pre-petition interest at the post-default rate would completely eliminate the benefits of cure in this case, as it would fail to nullify a significant consequence of the default. *See Entz–White*, 850 F.2d at 1343. FPC's claims for pre-petition interest at the post-default rate were properly denied.

■ FPC argues on appeal that if we conclude, as we have, that the Bankruptcy Court properly construed section 1124(2), then the application of the section to this situation is unconstitutional. FPC claims that this construction is a retroactive application of the Code, because FPC's lien was executed prior to the enactment of section 1124(2),[3] and therefore constitutes a taking of its property in violation of the fifth amendment. It relies upon *United States v. Security Indus. Bank*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982), which held that a section of the Bankruptcy Code would not be construed to apply retroactively to a security interest which was created before the enactment of the code section "in the absence of a clear expression of Congress' intent" to do so. *Id.* at 82, 103 S.Ct. at 414 (quoting *NLRB v. Catholic Bishop*, 440 U.S. 490, 507, 99 S.Ct. 1313, 1322, 59 L.Ed.2d 533 (1979)).

FPC raises this argument for the first time in this court. We decline to address this issue. An appellate court does not generally consider issues raised for the first time on appeal, even though it does have the power and discretion to do so when the issue presented is "purely one of law." *In re Wind Power Sys., Inc.*, 841 F.2d 288, 290 n. 1 (9th Cir.1988); *United States v. Greger*, 716 F.2d 1275, 1277 (9th Cir.1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984). In this case the government has not been heard on the issue of legislative intent; contrast *Security Indus. Bank*. In addition, determining whether the court's application of section 1124(2) in this case raises a possibility of a taking may well involve factual considerations relating to the impact of the statute on investment-backed expectations. *See Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed. 2d 631 (1978); *see also Ruckelshaus v.*

---

**2.** The section provides in pertinent part:

§ 502, Allowance of Claims or Interests.

(a) A claim or interest ... is deemed allowed, unless a party in interest ... objects.

(b)... [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim ... as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

... (2) such claim is for unmatured interest....

**3.** Due to the succession of parties, there is some question as to whether it was actually FPC's lien that attached prior to the enactment of the section. However, we have no occasion to discuss the matter as we decline to reach this issue.

*Monsanto Co.*, 467 U.S. 986, 1005, 104 S.Ct. 2862, 2874, 81 L.Ed.2d 815 (1984) ("The inquiry into whether a taking has occurred is essentially an 'ad hoc, factual' inquiry") (quoting *Kaiser Aetna v. United States*, 444 U.S. 164, 175, 100 S.Ct. 383, 390, 62 L.Ed.2d 332 (1979)); *cf. Wind Power Sys.*, 841 F.2d at 290 n. 1 ("The bankruptcy court's order in this case contains complete findings of fact that are undisputed by the parties"). We therefore conclude that it is inappropriate to consider the taking issue presented to this court for the first time on appeal.

■ Appellant FPC challenges one other aspect of the Bankruptcy Court's order. The Bankruptcy Court allowed FPC post-petition attorneys' fees in the amount of $65,000. It added this amount to the principal of Southeast's note. FPC contends that the court should have required immediate payment of those fees before the plan went into effect.

The Bankruptcy Court did not err in adding the attorneys' fees award under section 506(b) to the principal of Southeast's note. Nothing in section 506(b) requires the current payment of fee awards. *See* 3 L. King, *Collier on Bankruptcy* ¶ 506.05, at 41–42 (15th ed. 1988). The practice of adding fees to the unpaid obligation has been approved in at least one other bankruptcy case. *See In re Colvin*, 57 B.R. 299, 302 (Bankr.D.Utah 1986). The Bankruptcy Court determined essentially that the reasonable value of FPC's attorneys' fees was equal to the discounted present value of $65,000 added to the note's principal at the six percent interest rate. The Bankruptcy Court's award of attorneys' fees is reviewed for abuse of discretion, *In re Nucorp Energy, Inc.*, 764 F.2d 655, 657 (9th Cir.1985), and we find no such abuse here.

The Bankruptcy Court committed no error in confirming the Southeast reorganization plan or in awarding fees. The decisions of the Bankruptcy Court and the Bankruptcy Appellate Panel are AFFIRMED.